OF THE

## STATE OF WASHINGTON,

AT THE

## MAY SESSION, 1891.

[No. 631. Decided May 14, 1891.]

## ALBERT FREIDRICH V. THE TERRITORY OF WASHINGTON.

MURDER — INDICTMENT — CHARGING JURY — COMMENT ON FACTS —
PREJUDICIAL ERROR — EXCEPTIONS.

An indictment charging that defendant "purposely and of his deliberate and premeditated malice, killed one John Scherbring, then and there being, by then and there purposely, and of his deliberate and premeditated malice, shooting and thereby mortally wounding the said John Scherbring with a revolver pistol," etc., is sufficient to charge the crime of murder in the first degree.

Section 221, subd. 6, Code 1881, requires the court, in charging the jury, to state to them all matters of law necessary for their information in finding a verdict, with only such allusion to the evidence as may be necessary; but a court oversteps the bounds of a legal charge, though telling the jury the facts are for their decision alone, where, under the guise of an illustration of the meaning of circumstantial evidence, it devotes a long, oral charge to an argument of the very facts of the case, taking up the material constituents of the territory's case, dovetailing the facts together, and deducing and announcing a conclusion to the jury.

Although there is no exception to the whole or a part of the charge on the ground that it is an argument upon the facts, yet, in a capital case, if there is prejudicial error, which is patent upon the face of the record, denying the accused the fair and impartial trial which is his right, the supreme court will not allow these technical objections to deprive defendant of a new trial.

(358)

*Appeal from District Court, King County.*

Trial of Albert Freidrich for murder upon an indictment as follows:

"Albert Freidrich is accused by the grand jury of the Territory of Washington for the counties of King and Kitsap, in the third judicial district of said territory, by this indictment, of the crime of murder in the first degree, committed as follows: The said Albert Freidrich, on the 14th day of July, 1887, in the county of King, in the district aforesaid, purposely, and of his deliberate and premeditated malice, killed one John Scherbring, then and there being, by then and there purposely, and of his deliberate and premeditated malice, shooting and thereby mortally wounding the said John Scherbring with a revolver pistol, which he, the said Albert Freidrich, then and there had and held, contrary," etc.

Defendant demurred to the indictment on the following grounds:

"*First:* That the same stated no facts sufficient to constitute the crime of murder.

"*Second:* That the same did not substantially conform to the Code of Washington."

The demurrer was overruled and exceptions allowed. The facts are sufficiently stated in the opinion.

*James Hamilton Lewis,* for appellant.

The indictment is insufficient; it charges no death, no time of death, or that the assailed is dead; states "no facts constituting the offense," and charges no murder. *Com. v. Adams,* 1 Gray, 481; *Com. v. Dedham,* 16 Mass. 141; *Moore v. Com.,* 6 Metc. 243 (39 Am. Dec. 724); *State v. Morgan,* 85 N. C. 581; 1 Archb. Cr. Pl. & Pr., 791, and citations; Bishop, Directions and Forms, 517; *State v. Coleman,* 17 S. C. 473; *State v. Sundheimer,* 93 Mo. 311 (6 S. W. Rep. 52); *State v. Blan,* 69 Mo. 317.

As to the court's assuming that certain facts are proved,

and singling out facts, see *White v. State,* 13 Tex. 133; Proffatt, Jury Trials, §§ 319, 320, 323, 327, 336; Harris, Crim. Law, 339, note, and cases cited; *Blackwell v. State,* 67 Ga. 76 (44 Am. Rep. 217); *Caldwell v. United States,* 8 How. 366; *Brown v. State,* 3 Tex. App. 294; *People v. Keefer,* 65 Cal. 232; *People v. Williams,* 17 Cal. 142; *People v. Hurley,* 57 Cal. 145; *Sharp v. State,* 51 Ark. 147 (14 Am. St. Rep. 27); *Leonard v. Territory,* 2 Wash. T. 381.

*John F. Miller,* Prosecuting Attorney, and *Ronald & Piles,* for The Territory.

The obvious purpose of the sections of our code prescribing general regulations as to the form and substance of indictments, is to do away with the common-law tests. *People v. King,* 27 Cal. 507 (87 Am. Dec. 95); *People v. Ah Woo,* 28 Cal. 206; *People v. White,* 34 Cal. 186; *People v. Dick,* 37 Cal. 277; *People v. Murphy,* 39 Cal. 52.

Trial by a jury in the courts of the United States is a trial presided over by a judge with authority, not only to instruct the jury upon the law, but also, when in his judgment the due administration of justice requires it, to aid the jury by explaining and commenting upon the testimony, and even giving them his opinion upon questions of fact; provided only he submits those questions to their determination. *U. S. v. Philadelphia, etc., R. R. Co.,* 123 U. S. 113.

This rule prevailed in our territory and in the courts of all the states wherein there was no constitutional or legislative limitation upon the subject. And it may be summed up by the statement that under it it is the office of the judge in the exercise of a sound discretion to review the evidence in his charge to the jury — arraying the testimony of the opposing witnesses, pointing out the bearings of the different elements of the evidence upon the questions in issue, intimating his opinion as to the weight of each, and illustrating his meaning and enforcing his observation in

such manner as he thinks proper — his manner of exercising this discretionary power not being the subject of exception so long as he gives the jury distinctly to understand that his assertions are advisory merely, and that the responsibility of deciding the facts rests entirely with them. 2 Thompson on Trials, § 2294; *Ware v. Ware,* 8 Me. 42, 59; *Mansfield v. Corbin,* 4 Cush. 213; *Flanders v. Colby,* 28 N. H. 34; *Patterson v. Colebrook,* 29 N. H. 94; *Bruch v. Carter,* 32 N. J. Law, 554; *Gardner v. Picket,* 19 Wend. 186; *People v. Rathbun,* 21 Wend. 509; *McKee v. People,* 36 N. Y. 113.

The judge may read the testimony from the shorthand writer's notes, or he may recite it from memory, or he may give examples illustrating his meaning and the law, and if he instructs the jury that they are the exclusive judges of the weight to be given to the testimony, he commits no error. 2 Thompson on Trials, §§ 2281, 2282; *People v. Williams,* 59 Cal. 674; *State v. Jones,* 29 S. C. 201 (7 S. E. Rep. 296); *People v. Perry,* 65 Cal. 568; *McRae v. Lilly,* 1 Ired. L. (N. C.) 118. Stating the testimony is a very different thing from declaring what it shows; if the judge states the testimony, leaving the jury to determine what it shows, it is no error. *People v. Casey,* 65 Cal. 260; *Hawley v. Chicago, etc., R. R. Co.,* 71 Iowa, 717 (29 N. W. Rep. 187); *Andrews v. Parker,* 48 Tex. 94. Nor is it error for the court to instruct the jury that the evidence tends to prove a certain matter in issue. *Morris v. Lachman,* 68 Cal. 109; *People v. Perry,* 65 Cal. 568; *People v. Vasquez,* 49 Cal. 560; *Koerner v. State,* 98 Ind. 13; *Beattie v. Hill,* 60 Mo. 72.

The opinion of the court was delivered by

STILES, J. — The indictment was sufficient to charge the defendant with the crime of murder in the first degree. *Leonard v. Territory,* 2 Wash. T. 381 (7 Pac. Rep. 872); *Timmerman v. Territory,* 3 Wash. T. 445 (17 Pac. Rep. 624).

The appellant and the deceased had been close friends, and spent the day of July 14, 1887, in Seattle and its suburbs. They had carried beer out with them, and drank freely of it. About sunset they walked out on the Grant street bridge, and stopped for a short while at a saloon on the bridge. There they had a glass or two of beer, two other persons being present and drinking with them. They were not intoxicated, and the persons at the saloon heard no quarrel or misunderstanding between them. At about dark they left the saloon together to return to town, and within a few minutes persons in the neighborhood heard two shots on the bridge, and heard a cry of distress. Several of those who heard the shots ran in the direction from which the unusual sounds seemed to come, and found the deceased leaning over the bridge-rail, with a bullet imbedded in his head just back of the left ear. He was conscious, and able to walk with assistance. Being asked who had shot him, he answered that he did not know, and in this statement he persisted, until the appellant was brought before him, when he avowed that appellant had shot him, but gave no particulars. He gave, as a reason why he had at first said he did not know who his assailant was, that he did not then think he was very badly hurt, and did not wish to give away his friend. He died within a few days after he was shot, without making any other admissible statement. Appellant was arrested, indicted, convicted of murder in the first degree, and sentenced to death. Aside from proof of what the deceased said in the presence of the appellant, as above stated, all the evidence at the trial was circumstantial; it being devoted to showing the attempted flight of the appellant immediately after the shooting, and his confused and contradictory statements after his arrest, with the fact that, in the presence of deceased, he made no positive denial of Scherbring's charge that he had fired the fatal shot. No effort was made to show a motive for the murder.

In answer to the territory's case, appellant took the stand as a witness in his own behalf, and denied having shot deceased, or that he knew who had shot him. He told how they had spent the day together, and claimed that immediately upon their leaving the saloon on the bridge he had left deceased, who was disposed to loiter along, and hastened ahead to attend the meeting of a German singing society of which he was a member. He did not attend the meeting, for the reason, as he claimed, that, as he approached the building, he heard the members singing, and, finding that he was late, turned away, and went elsewhere. These were the only points touched upon by him in his testimony with the exception that, whereas witnesses for the territory had stated that he was taken into Scherbring's presence twice on July 16th, he claimed to have been there but once. He did not dispute what was alleged to have been said there, nor did he in any other particular contradict the testimony of the prosecution. It will thus be seen that his testimony was of no great materiality to his defense, and there was no call for any extended cross-examination; since, in such cases, the cross-examination ought to be confined strictly to the matters touched upon by the defendant, excepting in so far as his history may be inquired into for the purpose of testing his credibility in the matters testified to by him. But here the cross-examination was extended to a very great length, with almost no reference to the examination in chief; but the defendant was taken over all the ground covered by the territory's witnesses, apparently for no other purpose than to place him in seeming hostility to them in order to discredit him by the contrast, and to have some foundation for the subsequent attack made upon his past history.

A great part of the evidence for the prosecution was directed to showing the whereabouts and actions of the defendant from the time of the shooting until his arrest, at

noon on July 15th.   He was arrested at Slaughter, a number of miles south of Seattle, while walking along the railroad track, and had not been seen by any person who knew him since he and deceased left the saloon on the evening of the 14th, excepting that certain witnesses testified that they saw him on the opposite side of Seattle on the evening of the 15th.   He was a shoemaker, but had not been seen at his shop from the day of the 14th.   At the time of his arrest, and afterwards, the persons who arrested him endeavored to draw from him damaging statements and admissions.   All these things had been testified to by the territory's witnesses; and to them the cross-examiner called his attention, and pressed him for admissions of their truth, or of the untruth of what he answered in denial or explanation of them.   This was not cross-examination, but it was allowed to run itself out when the subject was exhausted, without any objection by defendant; and it is only alluded to here to show how there came to be any foundation for almost the only legitimate part of the cross-examination, viz., that wherein his past life was inquired into.

The prosecutor asked the defendant a series of questions which were intended to draw from him an admission that he was not Albert Freidrich, but one "Leubens" Freidrich, who was assumed to have been a German soldier, to have been fined in Hamburg in 1880 for a breach of the peace, and to have deserted his wife and child.   Error is assigned upon the overruling of objections to these questions, and thereupon a curious state of things is presented. Against the defendant, Freidrich, the prosecution was entitled to none of the matters sought to be brought out; but, as against the witness Freidrich, it was entitled to them, to the extent that they might affect his credibility on his direct examination, but not on his cross-examination as to matters about which he had not testified in chief; for, by thus cross-examining him, the territory made him its

own witness, and was bound by what he said. *People v. Irving*, 95 N. Y. 541. The defendant had returned negative answers to almost all questions thus asked. The prosecutor had presented to him a letter from Leubens Freidrich which he denied having written, a photograph which he admitted to be one of himself, a German army list which he declared did not describe him when a soldier, and some other papers which he said had no reference to him. After the defendant retired from the stand the prosecutor said:

"I now offer in evidence, if the court please, the depositions of the various army officers and magistrates connected with the court, which says he belonged to a company, and the fact that this is a photograph of the Leubens spoken of in these depositions. They are in German; I will have them translated."

Upon objection the court said, "They are not admissible;" and there the matter dropped. It is now urged that this whole course of inquiry into the history of the defendant was a plan of the prosecution, to throw a cloud of suspicion over him by mere insinuation, without legal evidence tending to support it; the offer of the "depositions" being but the crowning effect in that direction. It was not fair treatment of the defendant, certainly. The outcome showed that there was no reason to expect success in the effort to identify the defendant with Leubens Freidrich. The prosecutor must have known that the "depositions" could not be received as evidence under any circumstances, and it was not proper to state in the hearing of the jury what they would show. Still, if there were nothing more objectionable in the case, we are not prepared to say that this conduct of the territory's representative ought to reverse the judgment, although it comes dangerously near it. The duty of a prosecutor is to present to the jury the facts as they can be made to appear by legitimate testi-

mony, and when that is done his duty is ended. An offer of proof may often be made under circumstances where it is necessary to explain its connection or effect in order to show its admissibility; but such an offer presupposes some legitimate means at hand of making the proof, not an *ex parte* statement of some German military tribunal which could have no more force than waste paper. That the matter passed, in this instance, without further challenge in the court below, alone redeems it from its legitimate effect.

But this judgment must be reversed upon the court's charge to the jury. As before said, the evidence on the part of the prosecution was entirely circumstantial; but it was clearly stated, uninvolved, and straight to the point. On the other hand, the defendant rested entirely upon his own denial, the testimony of witnesses as to his good character, and the absence of proof of motive. The charge, in such a case, ought to have been confined closely to the law applicable, with only such allusion to the testimony as was necessary to make clear the law of the case. Judges of the territorial district courts, when trying criminal cases under the territorial laws, did not have the latitude accorded to judges of the United States district courts in the matter of charging the jury. Section 221, subd. 6, code, contemplated a statement of all matters of law necessary for the information of the jury in finding a verdict, and only such "allusion" to the evidence as was necessary. The discretion of the trial court was final in determining where and what allusion was necessary; but the power to allude was for the purpose of making clear the bearing of the law, and for nothing more. Therefore where, as in this case, a long and wholly oral charge was largely devoted to an argument of the very facts of the case, although carried on under the guise of an illustration of the meaning of circumstantial evidence, in which every material constituent

of the territory's case but one was taken up, the facts dove-
tailed together, and a conclusion deduced and announced to
the jury; and where, in reference to the one point reserved,
the court's opinion was distinctly made to appear, though
not stated, it is too clear for argument that, however often
the jury were told that the facts were for their decision alone,
the bounds of a legal charge were overstepped, greatly to the
prejudice of the defendant.

As it is not possible, under our constitutional provisions,
that any superior court will take the course here adopted,
we shall not burden the decision with any extended extracts
from the charge. The following will suffice to show the
style of language used. The review commenced thus:

" Now, gentlemen, let us look at these facts dispassion-
ately, without prejudice, and without thinking, so far as
that goes, who this defendant is, or who the man that was
killed was."

Then follows a narration of the actions of the defendant
and the deceased up to their leaving the saloon together,
and of the hearing of the shots, and the voice of Scherbring.
Then, there was a discussion as to the probability that the
man shot himself, or was shot by some other person, with
a conclusion in favor of the latter theory, thus:

" From these circumstances, we arrive at the conclusion
that the man was shot by some one other than himself."

Again:

" The question now is, who did it? That is the question
that is left. If what I have said to you satisfies you that
Scherbring was shot by somebody other than himself, and
that he died from the wound, then the territory have proved
that much of their case so that we are satisfied with it.
Now, with the same impartiality, discretion and deliber-
ation, weighing all the circumstances, we approach the other
question. Did the defendant shoot him? That is the only
question left."

Here occurs a review of the testimony of defendant, on

the cross-examination concerning his movements from the evening of the 14th on; and of that of the prosecution's witnesses on the same point. Speaking of the latter, there are such expressions as these:

"Do they lie about it? Did they mean to lie about it?"

Concerning defendant:

"This story that he tells you about where he went to, if it is true, notwithstanding some of it may seem a little improbable, . . . that is his story; of course, if it is true, he was not out here where Longstaff, Noonan and Stewart say they saw him."

The concluding remark was: "It is for you to say, gentlemen, whether he shot Scherbring or not;" but after so "impartial" a discussion, if any juror of the twelve had been weak enough to be influenced by what the court's opinion of the undecided fact was, his verdict could not be long doubtful.

There is a technical objection made to our consideration of the charge, under this aspect, by the counsel for the territory, because the exceptions taken immediately after its delivery, twenty-two in number, were all very brief, and each merely called the attention of the court to a phrase or two which was formally objected to. There was no exception to the whole or a part of the charge, on the ground that it was an argument upon the facts to the prejudice of the defendant. It is true that generally we expect to be called upon to pass upon those portions of a charge which are alleged to misstate the law, only when the error was called to the attention of the court below, and the objection raised by exception. But the error in this case was not one of statement concerning the law of it, which might have been corrected upon a recall of the jury. This was an error of conduct on the part of one branch of the court by assuming the functions of the other branch — an error which was

irreparable with the jury then in the box, because the argument and conclusions rehearsed in their presence were incapable of recall; they had made their impression the instant they were uttered, and no correction from the same source would have had any effect except to confuse jurymen. This matter was fully argued in print, so that there was no surprise in this court; and, from the language of several of the exceptions actually taken, we think it probable that the same question was presented to the court below on motion for a new trial. In a capital case, if there was prejudicial error which is patent upon the face of the record, the appellate court should not allow technical objections to deprive the defendant of a new trial. Here the error was prejudicial to the extent of denying the accused that fair and impartial trial which was his right, no matter what may have been the degree or heinousness of his offense; and the error is too patent to be mistaken.

There were some specific errors which it is not necessary to notice, as they are not likely to occur upon a retrial. This holding decides the case, but we cannot refrain from going beyond the suggested errors of commission in this charge to notice one of singular omission. The opening words of the charge were: "The defendant here is charged by the grand jury of this county with having committed the crime of murder by shooting a man by the name of Scherbring on the 14th day of last July," and there all allusion to the crime charged or the elements constituting the crime ended. The indictment alleged murder in the first degree, but no explanation was given of the facts necessary to be shown to warrant a conviction, either by reading the statute or by equivalent oral statement. Nor were the jury informed that under §§ 786, 790 and 1097 of the code, if they found that the prisoner did shoot the deceased, unless they also found deliberation and premeditation, they could return a verdict of murder in the second degree only. On

the contrary, having said to them that the only question left was, " did the defendant shoot him?" the court fur-nished them with two forms of verdicts, the first of which was, " We, the jurors in this action, find the defendant not guilty;" and the other was, " We, the jury in this action, find the defendant guilty as charged in the indictment." The court was not called upon in this case, under the evidence, to instruct in regard to manslaughter, at least without a request therefor; but to omit to define the degrees of murder, and to give the jury the liberty of saying under which head the facts proved a crime, was so great an oversight that it is to be accounted for only upon the theory that the discussion of the facts to so much length over-shadowed the fundamental law of the case, and caused it to be forgotten.   The judgment is reversed, and a new trial granted.

ANDERS, C. J., and HOYT and DUNBAR, JJ., concur.

SCOTT, J., concurs in the result.