[No. 1873-2.    Division Two.    April 8, 1976.]

THE STATE OF WASHINGTON, *Appellant*, v. PATRICK J. GALLAGHER, *Respondent*.

*Donald F. Herron, Prosecuting Attorney, Quinby R. Bingham, Special Assistant,* and *Michael Cesarano, Assistant,* for appellant.

*John J. O'Connell* and *William E. Cullen, Jr.,* for respondent.

PETRIE, C.J.—The State of Washington has appealed an

order dismissing a six-count information entered after the special assistant prosecutor concluded his opening statement to the jury at the commencement of trial. We affirm the order of dismissal with prejudice as to counts 2 through 6. The dismissal as to count 1 is affirmed in part and reversed in part.

Preliminarily, we deem it necessary to determine whether a trial court may dismiss a criminal information, valid on its face, at the conclusion of the prosecution's opening remarks to the jury prior to the presentation of evidence. Federal courts appear to possess that power. *McGuire v. United States*, 152 F.2d 577 (8th Cir. 1945). However, we have not been presented with, nor have we discovered, any direct authority in this jurisdiction which holds a trial court has that power. Furthermore, in the event the authority exists, we must determine under what circumstances the court should exercise it.

One eminent commentator views the office of the opening statement in a criminal trial in this fashion:

> Basically, the purpose of the opening statement is to program the jurors so that they can follow and understand the evidence as it unfolds during the trial. It is not the office of an opening statement to argue the merits of the case, to discuss the pertinent law, to recite the anticipated testimony or other evidence at length and in detail, to advert to a confession or other inculpatory statement of the defendant, to point to the defendant's criminal record, or to note that another defendant has pleaded guilty or has otherwise been convicted.

(*Footnotes omitted.*) 3 C. Torcia, *Wharton's Criminal Procedure* § 493, at 378-79 (12th ed. 1975). No mention is made of a defendant's right to have criminal charges filed against him dismissed because of the insufficiency of an opening statement.

There is some indication in this jurisdiction, however, that under a former statute, which seemed to *require* an opening statement in *civil* actions, the Supreme Court has at least twice discussed the possibility of entertaining a motion to dismiss a *criminal* information after the prosecu-

tion's opening remarks to the jury. *State v. Duncan*, 124 Wash. 372, 214 P. 838 (1923) and *State v. Fairfield*, 161 Wash. 214, 296 P. 811 (1931). (The foundation statute, however, has since been repealed.)[1]

In *Duncan* the court was content to state merely:

If it be conceded that the court is bound to entertain such a motion upon its merits (a question which we do not determine), yet, we hold that it was properly denied.

*State v. Duncan, supra* at 375.

In *Fairfield* the court explained:

But, while it is true that the statute prescribing the manner of conducting trials (Rem. Comp. Stat., § 339) *seems to require* an opening statement of the cause of action, and the evidence expected to sustain it, too much stress must not be laid upon such statements. If it appears, from the facts recited, that the party having the affirmative of the issue has no cause of action, a motion to dismiss will be in order. But it is hardly a remedy, even in a criminal case, for a mere defective statement. If the opposing party requires further enlightenment, he should move to have the statement made more complete, and resort to the motion to dismiss only when this has been denied him.

(Italics ours.) *State v. Fairfield, supra* at 218.

Because this procedural statute has been repealed, there is now neither statute nor rule which "seems to require" a plaintiff in a civil or a criminal trial to make an opening statement. Nevertheless, if a plaintiff in a civil proceeding chooses to make an opening statement, the sufficiency thereof is subject to certain judicial scrutiny. *Bartel v. Brockerman*, 49 Wn.2d 679, 306 P.2d 237 (1957).

---

[1]Section 221 of an act entitled "An act to regulate the practice and proceedings in *civil* actions," approved December 1, 1881, as last amended by section 1, chapter 86, Laws of 1909 (subsequently being known as Rem. Comp. Stat. § 339), provided in part: "When a jury has been sworn, the trial shall proceed in the following manner:

"(1) The plaintiff *shall* briefly state the cause of action and the evidence by which he expects to sustain it." (Italics ours.) Section 221 was repealed by Laws of 1943, ch. 206. From earliest statehood, it had been applied to criminal trials. *Freidrich v. Territory*, 2 Wash. 358, 26 P. 976 (1891); *State v. Coella*, 3 Wash. 99, 28 P. 28 (1891).

In *Scott v. Rainbow Ambulance Serv., Inc.*, 75 Wn.2d 494, 452 P.2d 220 (1969), the court stated at page 496:

> Occasionally, however, the opening statement deliberately and understandingly invites the court's ruling at that stage of the proceeding. The statement is framed so as to eliminate all factual differences of consequence, leave an isolated and determinative question of law, and thus make possible the expeditious conclusion of the matter.

In *Halvorson v. Birchfield Boiler, Inc.*, 76 Wn.2d 759, 458 P.2d 897 (1969), the court stated at pages 760-61:

> A motion to dismiss based on the failure of the complaint and the opening statement to state a claim upon which relief can be granted, can be granted only where it is clear beyond doubt from reading the complaint, hearing the opening statement, and considering offers of proof that plaintiffs cannot prove facts which would entitle them to relief.

In addition, RCW Title 10, which governs the conduct of criminal procedures, specifies:

> The court shall decide all questions of law which shall arise in the course of the trial, and the *trial shall be conducted in the same manner as in civil actions.*

(Italics ours.) RCW 10.46.070.

We hold, therefore, that when a prosecutor chooses to make an opening statement to a jury, a defense motion to dismiss the charges may be granted only when it is clear beyond doubt that the statement affirmatively includes fact matter which constitutes a complete defense to the charge or expressly excludes fact matter essential to a conviction. In other words, charges frame the issues; statements of counsel do not. However, when some fact is clearly stated or admission is expressly made, leaving only an isolated and determinative issue of law, the court may resolve that issue. *See Frisell v. Surry*, 99 Wash. 201, 169 P. 317 (1917); *Strmich v. Department of Labor & Indus.*, 31 Wn.2d 598, 198 P.2d 181 (1948); *Scott v. Rainbow Ambulance Serv., Inc., supra*; *Halvorson v. Birchfield Boiler, Inc., supra.*

Armed with this rule, we turn to the several counts in

the information before us and the special prosecutor's statement pertaining thereto.

Counts 2 through 6 of the information charge Patrick J. Gallagher, Pierce County Commissioner in Commissioner District No. 1, with having committed the crime defined by article 11, section 14 of the Constitution of the State of Washington entitled "Private Use of Public Funds Prohibited," which provides:

> The making of profit out of county, city, town, or other public money, or using the same for any purpose not authorized by law, by any officer having the possession or control thereof, shall be a felony, and shall be prosecuted and punished as prescribed by law.

The prosecution has never asserted that Mr. Gallagher made a profit out of public funds. Instead, the charging language common to counts 2 through 6, is that at various time intervals ranging from 1965 to 1972, Mr. Gallagher knowingly, willfully, and feloniously directed, authorized, and encouraged the *use* of public money "for a purpose not authorized by law." As clarified by the special prosecutor's opening statement, the State contends that Commissioner Gallagher feloniously used "county road fund" money (RCW 36.82.010) to construct roads within Commissioner District No. 1 at a time when those roads had not been specifically adopted into Pierce County's "6-year road plan" (RCW 36.81.121) or its "1-year plan" (RCW 36.81.130). The prosecutor explained, however, that when the county commissioners adopt each district's 1-year road plan they routinely set aside a sum of money equal to 10 percent of that district's annual estimated county road costs and place the same into a so-called "county force account" of that district's "county road fund." Funds from this "county force account," unallocated at the time the annual road plan is adopted, are used by county employees to construct and maintain roads for which the county commissioners had no specific construction or maintenance plans when the 1-year plan was adopted.

The special prosecutor explained that counts 2 through 5

charge Commissioner Gallagher with having used this "county force account" to establish, improve, and construct roadways within his Commissioner District "in aid of and for the private benefit and gain of an individual, to-wit: Joseph J. Bath, and not for any proper county road purpose, all being contrary to Article 11, Section 14 of the Washington State Constitution . . ." Count 6 is essentially the same, but it fails to specifically name the individual for whose benefit the funds were used.

Joseph J. Bath enters into four of these counts, according to the special prosecutor's statement, because on repeated occasions he either (1) obligated himself to others as a private contractor to construct several public roads to county standards within Commissioner Gallagher's district, or (2) personally undertook to subdivide and develop his own land, including construction of several roads within the development. In each instance, as recited in the statement, Mr. Bath either failed to perform his contractual obligations or failed to construct the roads in his personal development site in the manner that other contractors or developers would be required to do; and the county road crews, at Commissioner Gallagher's direction and under the supervision of Mr. Richard Corey, road supervisor of Road District No. 1, used "county force account" road funds to complete Mr. Bath's construction obligations. Mr. Bath is reported to have said that "he knew how to get roads built through the County Commissioner's office." By resolutions, which were subsequently unanimously adopted, the Board of County Commissioners authorized the construction of these roads and accepted the land upon which the roads had been constructed.

An extensive statutory scheme for the establishment, construction, and financing of county roads and ancillary facilities is set forth in RCW 36.75 through 36.89. It would be impossible to summarize that scheme in this opinion, but it is apparent that a board of county commissioners has ample authority as well as the duty to expend county road funds for the purpose of acquiring property and construct-

ing roads within the county. RCW 36.75.050 provides, however, that the board shall by resolution, *and not otherwise*, order the survey, establishment, construction, alteration, or improvement of county roads. Further, the statutory scheme provides that construction of roads, by county forces or by contract, shall be in conformity with a plan adopted annually as the county's road budget and, after adoption, the plan may not "be changed except by unanimous vote of the county commissioners." RCW 36.81.130.

From the foregoing, it is apparent that the real essence of the allegations in counts 2 through 6 is that Mr. Gallagher used public funds in a *manner* not authorized by law, instead of (as specifically provided by the constitutional prohibition) "for any *purpose* not authorized by law." Indeed, the first page of the State's opening brief on appeal explicitly asserts that Mr. Gallagher "used public funds committed to his control *in a manner not authorized by law*." (Italics ours.)

Immediately the question is posed: In the absence of a contention that the public official made a profit from the use of public funds, does the constitutionally defined crime enunciated by article 11, section 14, proscribe a use of public funds by a public official for a purpose authorized by law but in a manner not specifically authorized by law at the time the funds were expended? No prior judicial interpretations of article 11, section 14 of the Constitution of the State of Washington have considered this question, but we answer in the negative for two reasons: (1) on its face, the constitutional provision requires a negative response to the question posed, and (2) shortly after the provision became effective, the First Legislature augmented it in a manner indicating an intent that the question should be answered negatively.

1. On its face, the constitutionally defined felony appears to proscribe two distinctly separate kinds of acts by an officer who has possession or control of public money:

a. Making a profit out of public money regardless of the method, manner, or mode by which the money is used; and

b. Using public money "for any purpose not authorized by law," even though the official makes no profit out of such use.

2. A bill enacted by the First Legislature of the State of Washington provided:

SECTION 1. If any state, county, township, city, town, village, or other officer elected or appointed under the constitution or laws of this state, court commissioner, or any officer of any court, or any clerk, agent, servant or employee of any such officer, *shall, in any manner not authorized by law,* use any portion of the *money* entrusted to him for safe keeping in order *to make a profit* out of the same, *or shall use the same for any purpose not authorized by law,* he shall be deemed guilty of a felony, and on conviction thereof, shall be imprisoned in the penitentiary not less than one nor more than ten years.

SEC. 2. In prosecutions for the offenses named in section one hereof, it shall be sufficient to allege generally in the information, or indictment, that any such officer, court commissioner, clerk, agent, servant, or employee *has made profit out of the public money* in his possession, or under his control, *or has used the same for any purpose not authorized by law* to a certain value, or amount, without specifying any further particulars in regard thereto, and on the trial evidence may be given of all the facts constituting the offense and defense thereto.

(Italics ours.) Laws of 1889-90, p. 113 (subsequently repealed by Laws of 1927, ch. 43, § 1, p. 33).

The bill was introduced as Senate Bill No. 9 on November 25, 1889 (only 2 weeks after statehood) by state Senator John R. Kinnear, Chairman of the Judiciary Committee, who had also been a prominent delegate to the Constitutional Convention which established article 11, section 14. The act became effective upon approval by the Governor on December 20, 1889. Article 11, section 14, seems to have initiated the idea upon which the statute was based. *State v. Krug,* 12 Wash. 288, 41 P. 126 (1895).

The legislative intent, obviously an early expression of the intention of the framers of the constitution, even more succinctly distinguishes the two separate types of actions

attempting to regulate use of public money. Under the statute enacted in 1889, a public official or employee exposes himself to a felony charge whenever he:

    a. "shall, in any manner not authorized by law, use . . . money . . . to make a profit . . .";

    b. "or shall use the same for any purpose not authorized by law, . . ."

■ It appears, therefore, with regard to the use of public money, the constitution and the early statute attempted to define crimes of misfeasance and malfeasance. Malfeasance—doing that which should not be done at all—was punishable regardless of whether the public official made a profit. Misfeasance—doing in an improper *manner* that which would otherwise be acceptable—was punishable as a felony only in the event the public official made a profit. *See* R. Perkins, *Criminal Law* 414 (1957).

Viewed in this light, it is clear beyond doubt that the special prosecutor's statement affirmatively includes factual matters which constitute a complete defense to counts 2 through 6 of the information. Commissioner Gallagher may well have committed acts of misfeasance in office as that term is ordinarily defined. We make no judgment on that because it is not an issue in this case. However, the *constitutionally defined felony* with which he has been charged, and which the prosecution must prove, declares that misfeasance (in contrast to malfeasance) in office by use of public money constitutes a crime only when the actor makes a profit out of its use. Accordingly, we affirm the trial court's dismissal with prejudice of counts 2 through 6.

We turn then to count 1 of the information, which charges Commissioner Gallagher with violating RCW 9.22.040, conspiracy against governmental entities. Count 1 charges in part that, while being a public officer, Mr. Gallagher

    *did* unlawfully, wilfully, feloniously and knowingly, *conspire*, combine, confederate and agree together with Joseph J. Bath and Richard Corey, who are named as co-conspirators but not as defendants herein, *to defraud* the State of Washington and the County of Pierce *or to com-*

*mit offenses* against the State of Washington and the County of Pierce, that is, *to use or give away county monies and property for purposes not authorized by law*, to-wit: the use of said public monies and property in aid of and for the private benefit and gain of an individual, to-wit: Joseph J. Bath, *and not for a purpose authorized by law*.

(Italics ours.)

The information thereupon proceeds to list 8 separate means and 14 separate overt acts by which Mr. Gallagher and the others allegedly committed this conspiracy. It is readily apparent that the alleged conspiracy "to *commit offenses* against the State of Washington and the County of Pierce" actually charges a conspiracy to commit the specific "crimes" subsequently set forth in counts 2 through 5 of the information. We have already held that those acts, if committed, do not constitute crimes as defined by article 11, section 14 of the constitution. Hence, we affirm the trial court's dismissal with prejudice of count 1 insofar as it pertains to a conspiracy to commit crimes.

That leaves, for final consideration, those portions of count 1 which allege that Mr. Gallagher conspired with Mr. Bath and Mr. Corey "to *defraud* the State of Washington and the County of Pierce." RCW 9.22.040 provides in part:

If two or more persons conspire either to commit any offense against, or *to defraud* the state, or any county, city, town, district, or other municipal corporation therein, or a department or agency of any thereof, *in any manner or for any purpose*, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than ten thousand dollars or imprisoned not more than five years, or both.

(Italics ours.)

As to this portion of count 1, the defendant contends the prosecutor's opening statement was clearly deficient because it failed (1) to assert factually that the defendant and his alleged coconspirators had ever entered into an *agreement* to commit the acts alleged, (2) to assert factually that the alleged coconspirators agreed to commit an

*unlawful act,* and (3) to express factually the commission of any acts which constituted *fraud* upon the state or county.

RCW 9.22.040, enacted in 1961, unquestionably defines conspiracy against a public body in broad, sweeping language. It is taken directly from a federal statute now codified as 18 U.S.C.A. § 371 and carries the construction previously placed upon its progenitor. *State v. Carroll,* 81 Wn.2d 95, 500 P.2d 115 (1972). 18 U.S.C.A. § 371 was carefully analyzed and interpreted in *Marino v. United States,* 91 F.2d 691, 113 A.L.R. 975 (9th Cir. 1937) at 693-94 and 698 as follows:

> A conspiracy is "a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means." . . . It is a partnership in criminal purposes. The gist of the crime is the confederation or combination of minds.
>
> A conspiracy is constituted by an agreement; it is, however, the result of the agreement and not the agreement itself. No formal agreement between the parties is essential to the formation of the conspiracy, for the agreement may be shown "if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." . . .
>
> The purpose to be accomplished by the conspiracy may be either lawful or unlawful. If the purpose is lawful and is carried out by lawful means, then no offense is committed. If it is lawful and is carried out by criminal or unlawful means, then the statute is violated. . . . On the other hand, if the purpose is unlawful and is carried out either by lawful or unlawful means, the statute is violated.
>
> . . .
> . . . Proof of a conspiracy may be by circumstantial evidence, often times by overt acts alone, in which case much is left to the discretion of the trial court.

(Citations and footnotes omitted.)

It appears, therefore, that (1) the agreement may be proved circumstantially by the overt acts alone, at least

when a series of similar acts occurs over a protracted time period, and (2) the agreement may be an agreement to commit a lawful act carried out by unlawful means. Furthermore, fraud is a factual matter which may be inferred from circumstances. *State v. Bryant*, 73 Wn.2d 168, 437 P.2d 398 (1968); *State v. Konop*, 62 Wn.2d 715, 384 P.2d 385 (1963). *See also King County v. Theilman*, 59 Wn.2d 586, 369 P.2d 503 (1962).

We find nothing affirmatively expressed in the prosecutor's opening statement in the nature of an admission that clearly and beyond doubt constitutes a complete defense to the crime of conspiracy against a governmental entity. Similarly, the prosecutor did not expressly exclude any factual material essential to a conviction. Reasonable inferences from the facts set forth in the statement could, but need not necessarily, lead a jury to conclude that these three men did have an understanding to, and did, complete these roads—each act of construction being for a lawful purpose —in an unlawful manner, by using road funds which had not yet been specifically authorized for use on any of the road projects, all to defraud Pierce County and its road funds out of public money which otherwise it need not and would not have expended. On the other hand, a jury could conclude otherwise.

Count 1 does not specifically charge conspiracy to commit a lawful act in an unlawful manner, but the special assistant prosecutor's statement, as amplified by his supplemental offers to the court, includes fact matter which, if proved to the satisfaction of a jury, supports that method of charging Commissioner Gallagher with violation of RCW 9.22.040. A criminal charge should not be dismissed upon the prosecution's opening statement if the fact matter asserted will support a conviction of the basic crime charged under one or more methods or modes of violating the statute. Under controlled circumstances, the trial court may permit any information to be amended at any time before verdict. CrR 2.1(d). Evidence provides the basis for the jury's verdict; statements of counsel do not.

We conclude, therefore, that the portion of count 1 which charged Commissioner Gallagher with conspiracy to defraud governmental entities should not have been dismissed with prejudice at the conclusion of the special prosecutor's opening statement to the jury. To that extent, the judgment of dismissal of count 1 is reversed, and a new trial is granted.

Because of the unique posture of the cause at this juncture, we deem it appropriate to add a postscript to this opinion. All parties should recognize that count 1 of the information is not fatally defective per se. However, because of the manner in which it charges the crime of conspiracy to defraud governmental entities, it is inconsistent with the fact matters asserted in the prosecution's opening statement. Upon retrial, unless the prosecution is prepared to present and does prove facts consistent with the present charge, either the information must be amended or the charge must be dismissed. It is not our function to suggest when or whether the prosecution should seek to amend the information; that is a function of the prosecuting officials. It is not our function to direct or authorize an amendment to the information; that is a function of the trial court at such time as the issue is properly presented to it.

Judgment of dismissal affirmed as to counts 2 through 6; judgment of dismissal as to count 1 is partially affirmed and partially reversed.

PEARSON and REED, JJ., concur.

Petition for rehearing denied May 24, 1976.