[No. 4966–1.  Division One.  July 31, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. NEIL B. LANGWORTHY, ET AL, *Appellants.*

Bannister, Bruhn & Cuningham, John R. Cuningham, and *Michael L. Lewis,* for appellants (appointed counsel for appeal).

*Patrick R. McMullen, Prosecuting Attorney,* for respondent.

DORE, J.—The defendants Neil and Ellen Langworthy (brother–in–law and sister–in–law) appeal from a judgment of guilty rendered by the Skagit County Superior Court on a charge of conspiracy to deliver a controlled substance (RCW 69.50.407). Defendants appeal.

## FACTS

Neil Langworthy was an inmate at the Skagit County Jail from March 22, 1976, through April 10, 1976. Inmates in the Skagit County Jail could deposit or have money deposited in their particular prison box for the purchase of cigarettes and candy. Neil had served as a trustee during a previous prison stint and was familiar with the procedures for purchasing cigarettes through funds deposited in such boxes.

On April 2, 1976, Ellen visited Neil at the Skagit County Jail. At that time Neil was down to his last few cigarettes so Ellen left a pack of cigarettes for his use. She also offered to leave Neil $5 for purchase of additional cigarettes. Neil

refused Ellen's money indicating that he felt he could make his last 7 days in jail without any further cigarettes. In spite of Neil's refusal to accept the money, Ellen testified that following her jail visit she left $5 for Neil to be placed in his property box.

At approximately 6 o'clock in the evening on April 2, 2 hours after Ellen left and admittedly at a time when he possessed at least one package of cigarettes, Neil requested jailer Dean Miller to call a phone number in Anacortes, Washington, and ask for Ellen and "to tell her that he wanted cigarettes and if she couldn't bring them to have 'Jake' bring them." Jake is the nickname of Steven Michael, a friend and houseguest of the Langworthys and known as a heroin user. The jail records indicate Michael had visited Neil at the jail on April 2 immediately following Ellen's visit at 4 p.m. At approximately 11 o'clock that same evening jailer Miller called Ellen and conveyed Neil's message as requested. The following morning, April 3 at approximately 8:30 a.m., Neil requested another jailer, Steve Cover, to call his wife and tell her "he was dying for some cigarettes." Ellen admitted she received both telephonic messages from the jailers.

At approximately 2 o'clock in the afternoon of the following day, April 3, Ellen went to the Skagit County Jail and delivered a carton of Marlboro cigarettes for Neil. On a routine inspection of incoming materials jail officers discovered heroin in the cigarettes delivered by Ellen. A short time later Neil's property box was opened and it contained $5.38 in change. Neil admitted he had used heroin as recently as a year and a half before. Both defendants denied that there was an agreement between them to smuggle heroin to Neil in the jail.

## ISSUES

There are three issues raised on appeal: (1) whether RCW 69.50.407 is constitutional, (2) whether there was sufficient evidence to sustain convictions of defendants for the crime of conspiracy to deliver a controlled substance, RCW

69.50.407, and (3) whether the trial court erred in permitting police officers to testify regarding long–distance phone calls to Ellen in Anacortes, prior to the establishment of a prima facie case of conspiracy.

ISSUE 1: Constitutionality of RCW 69.50.407.

■ The law in Washington is clear that a statute which prescribes different punishments for the same act and authorizes a prosecutor to charge one person with a felony and another with a misdemeanor for the same act denies equal protection of the law as guaranteed by the fourteenth amendment to the United States Constitution, and article 1, section 12 of the constitution of this state. *Olsen v. Delmore,* 48 Wn.2d 545, 295 P.2d 324 (1956). Likewise, Washington law recognizes no logical basis for drawing a distinction between an authorization to charge for a "misdemeanor" contained in one statute and the same authorization contained in a different statute, which calls for a "felony," if the prosecution under each statute is for the identical act. *State v. Zornes,* 78 Wn.2d 9, 475 P.2d 109 (1970), 16A C.J.S. *Constitutional Law* § 564 (1956).

Appellants' constitutional challenge is based on a particular statutory interpretation with the issue being whether the Prosecuting Attorney for Skagit County at his discretion could have charged the Langworthys under either RCW 69.50.407 or RCW 9.22.010.

RCW 9.22.010 entitled "Conspiracy" states in part:

> Whenever two or more persons shall conspire—
> (1) to commit a crime; or
> . . .
> (7) to accomplish any criminal or unlawful purpose, or to accomplish a purpose, not in itself criminal or unlawful, by criminal or unlawful means;
> . . . shall be guilty of a gross misdemeanor.

RCW 69.50.407 entitled "Conspiracy" provides:

> Any person who attempts or conspires to commit any offense defined in this chapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the

commission of which was the object of the attempt or conspiracy.

It is undisputed that RCW 69.50.407 entitled "Conspiracy" is a felony, and RCW 9.22.010 entitled "Conspiracy" is a gross misdemeanor. The defendants were charged with felonies pursuant to RCW 69.50.407 rather than misdemeanors under RCW 9.22.010.

■ It is a well recognized rule of construction that where a general and a specific statute cover the same subject, the specific statute controls. *State v. Collins,* 55 Wn.2d 469, 348 P.2d 214 (1960); *accord, Agricultural Labor Relations Bd. v. Superior Court,* 16 Cal. 3d 392, 546 P.2d 687, 128 Cal. Rptr. 183 (1976); *Thompson v. IDS Life Ins. Co.,* 549 P.2d 510 (Ore. 1965); *Thomas v. State,* 562 P.2d 1287 (Wyo. 1977); *United States v. Beer,* 518 F.2d 168 (5th Cir. 1975); *cf. United States v. Bates,* 429 F.2d 557 (9th Cir. 1970) (holding a specific statute on conspiracy controls over a general statute in the matter of sentencing).

In the subject case RCW 69.50.407 is contained in the Uniform Controlled Substances Act. It is a specific statute, which prohibits a conspiracy to violate any offense defined in the act. RCW 9.22.010, on the other hand, has been held by our Supreme Court to be a general statute. *State v. Carroll,* 81 Wn.2d 95, 500 P.2d 115 (1972).

The rationale of *State v. Carroll, supra,* is controlling here. In *Carroll* the defense claimed that RCW 9.22.040 was unconstitutional in view of the fact that another conspiracy statute existed, RCW 9.22.010, wherein violations could only be charged as misdemeanors. The defense argued that in view of the existence of two identical conspiracy statutes, the prosecutor was given discretion to charge defendants with a felony or misdemeanor which was in violation of the equal protection laws of the United States and State of Washington.

Our Supreme Court upheld the constitutionality of the conspiracy statute, RCW 9.22.040, in *Carroll,* on the basis it was a special conspiracy statute while RCW 9.22.010 was a general conspiracy statute. The court concluded that as the

defendants were charged with an alleged special conspiracy, they could only be charged under the felony statute, and that the prosecutor had no discretion to charge under the general conspiracy law which was a misdemeanor statute.

In *Carroll,* in upholding the constitutionality of the special statute, RCW 9.22.040, the court stated at pages 99–101:

We then reach the question of the validity of the statute. It is the contention of respondents that RCW 9.22-.010 and 9.22.040 may be considered together to give the prosecuting attorney a choice of whether to charge a felony or a gross misdemeanor for the identical act. Respondents contend the statutes are void under the holding of *Olsen v. Delmore,* 48 Wn.2d 545, 295 P.2d 324 (1956).

RCW 9.22.010 was passed in 1909. It is a general statute which provides every violation shall be a gross misdemeanor.

RCW 9.22.040 was passed in 1961. It relates specifically to conspiracy against named units of government, and provides that every violation shall be punished by a fine of not more than ten thousand dollars or by imprisonment for not more than 5 years or by both, thus making it a felony.

RCW 9.22.040 is a specific statute, that is, *it only prohibits conspiracy against certain governmental units.* There is, therefore, a difference between the crime defined in RCW 9.22.010 and the crime defined in RCW 9.22.040. If the conspiracy be against one of the specified governmental units, the prosecuting attorney must charge such offense under the special statute, RCW 9.22.040.

This is similar to the situation wherein the general statute on manslaughter, RCW 9.48.060, was passed in 1854. In 1937 the negligent homicide statute, RCW 46.56.040 (now RCW 46.61.520), was passed providing only for the crime when committed by the driving of a motor vehicle.

The matter was considered in *State v. Collins,* 55 Wn.2d 469, 470, 348 P.2d 214 (1960) and it was therein held the prosecuting attorney could not make a choice between the two statutes. We said in part:

The general manslaughter statute antedates the special negligent homicide statute, which is directed to one specific mode of committing a homicide. This invokes the rule that, where a general and subsequent special statute relates to the same subject, the provisions of the latter must prevail. *Hartig v. Seattle,* 53 Wash. 432, 102 Pac. 408.

We hold that in all cases where the negligent homicide statute is applicable, it supersedes the manslaughter statute. This not only accords with the rules of statutory construction, but is the interpretation necessary to satisfy the requirements of the fourteenth amendment to the Federal constitution requiring equal protection of the law for all persons. The principle of equality before the law is inconsistent with the existence of a power in a prosecuting attorney to elect, from person to person committing this offense, which degree of proof shall apply to his particular case.

There is no choice given to the prosecuting attorney to charge under one section or the other, and, therefore, the statute is valid.

■ Adopting the rule of construction in *Carroll* that a special statute supersedes a general statute and applying it to the subject case, we hold that the Skagit County prosecutor had no discretion to file either felony or misdemeanor charges against the defendants Langworthy, but was mandated to proceed pursuant to the special statute, RCW 69.50.407, the Uniform Controlled Substances Act (a felony statute), which he did.

We hold that RCW 69.50.407 is constitutional and the defendants Langworthy were properly charged with felonies pursuant to that statute.

*State v. Carroll, supra,* was recently cited with approval in *State v. Lunstrum,* 19 Wn. App. 597, 576 P.2d 453 (1978).

ISSUE 2: Sufficiency of evidence.

■ The law in Washington supports the proposition that a conspiracy can be established by circumstantial evidence and this doctrine is enunciated in *State v. Gallagher,* 15 Wn. App. 267, 277, 549 P.2d 499 (1976), quoting from

*Marino v. United States,* 91 F.2d 691, 693–94, 698, 113 A.L.R. 975 (9th Cir. 1937), as follows:

A conspiracy is "a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means." . . . *It is a partnership in criminal purposes. The gist of the crime is the confederation or combination of minds.*

A conspiracy is constituted by an agreement; it is, however, the result of the agreement and not the agreement itself. No formal agreement between the parties is essential to the formation of the conspiracy, for the agreement may be shown "if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose."

The purpose to be accomplished by the conspiracy may be either lawful or unlawful. If the purpose is lawful and is carried out by lawful means, then no offense is committed. If it is lawful and is carried out by criminal or unlawful means, then the statute is violated. . . . On the other hand, if the purpose is unlawful and is carried out either by lawful or unlawful means, the statute is violated.

. . .

. . . *Proof of a conspiracy may be by circumstantial evidence, often times by overt acts alone, in which case much is left to the discretion of the trial court.*

(Italics ours.)

Both defendants admit to a common plan to deliver cigarettes into the Skagit County Jail, which plan was initiated by Neil through long–distance phone calls from the jail to Ellen, who in turn carried out the plan by personally bringing the cigarettes containing heroin into the jail for Neil's use. Neil's defense was that he had no knowledge that the cigarettes contained heroin. Ellen readily admits her participation in the delivery of the heroin but claims she mysteriously found the contraband in the defendants' truck and that she had no knowledge the cigarettes contained heroin until it was discovered at the jail.

■ Let us examine pertinent findings of fact of the trial court on the issue of knowledge. As such findings are unchallenged, they will be considered verities. These findings are:

Finding of fact No. 5:

On April 2nd, at approximately 1:00 o'clock, Ellen Langworthy visited Neil Langworthy in the Skagit County Jail. At that time Neil Langworthy was down to his last few cigarettes and had forty to fifty cents to his name at the jail. Ellen Langworthy left a pack of cigarettes for him at that time and discussed leaving approximately $5.00 in change, which she had on her person, with Neil Langworthy to purchase cigarettes.

Finding of fact No. 6:

Neil Langworthy refused the approximately $5.00 in change which Ellen Langworthy had, indicating that he felt he could make his last seven days in jail without any further cigarettes.

Finding of fact No. 7:

Inmates in the Skagit County Jail may deposit or have money deposited in their particular box for use while they are in jail. Cigarettes and candy are available for sale to the inmates, including the brand of cigarettes which Neil Langworthy smokes, to wit: Marlboros.

Finding of fact No. 8:

Neil Langworthy had served as a trustee in the Skagit County Jail previously.

Finding of fact No. 9:

At approximately 6:00 o'clock in the evening of April 2, 1976, Neil Langworthy asked Jailer Dean Miller to call a phone number in Anacortes and ask for Ellen, and to tell her that Neil wanted a pack of cigarettes.

Finding of fact No. 10:

At approximately 11:00 o'clock, p.m., on April 2, 1976, Jailer Dean Miller called the operator to place a person to person collect call to the Anacortes phone number given to him by Neil Langworthy. The operator rang the number and asked the answering party for Ellen. There

was a response, "Yes." Dean Miller then gave the message that Neil wanted a pack of cigarettes. The other person gave no response. Jailer Miller then returned to the cell to tell Neil Langworthy that his call had been completed.

Finding of fact No. 11:

On April 3, 1976, at approximately 8:30 in the morning, Neil Langworthy asked Jailer Steve Cover to call his wife and tell her that he was dying for some cigarettes. Steve Cover called shortly thereafter and when a female voice answered, he asked if this were Mrs. Langworthy, to which he received the response, "Yes." Steve Cover then told the person on the phone that Neil Langworthy needed some cigarettes. The other person gave no response. Steve Cover then advised Neil Langworthy that he had placed the call.

Finding of fact No. 12:

At approximately 2:00 o'clock in the afternoon of April 3, 1976, the intercom in the Skagit County Jail buzzed. This intercom is used to communicate between the jail on the inside and persons on the outside who wish to enter the courthouse to ride the elevator up to the jail. A person who wishes entry to the courthouse must ask the jailer, through the intercom, to release the lock on the outside door.

Finding of fact No. 13:

When the intercom buzzer rang, a female voice told Jailer Steve Cover, "This is Mrs. Langworthy. I have some cigarettes for Neil." Jailer Cover released the lock on the outside door.

Finding of fact No. 14:

After Jailer Cover released the lock on the outside door, Ellen Langworthy appeared at the jail door.

Finding of fact No. 15:

Detective Tim Thomsen opened the jail door to receive a carton of cigarettes (Plaintiff's Exhibit No. 2) from Ellen Langworthy. The carton of Marlboro cigarettes, was full of packs of cigarettes, but was open. Detective Thomsen wrote "Langworthy" on the carton and placed it on the counter for Jailer Cover to inspect.

Finding of fact No. 16:

When Detective Thomsen asked Ellen Langworthy who brought the cigarettes for Neil Langworthy, she responded, "Elbow. There'd better not be anyone else bringing him anything."

Finding of fact No. 17:

Jailer Cover inspected the carton of cigarettes (Ex. 2), and found one of the packages to have a cloudy appearance on one of the seals and appeared to have glue running out of it. Jailer Cover opened the package of cigarettes (Ex. 3), and found one-half of a disposable syringe and some other materials, and called Detective Thomsen to further inspect the package.

Finding of fact No. 18:

Detective Thomsen took the questioned package of cigarettes into custody and further examination revealed a balloon (Ex. 9) which analysis proved to contain heroin (Ex. 4).

Finding of fact No. 22:

On the night of April 4, 1976, Ellen Langworthy called her employer and explained that she had a problem and would not be in to work for a few days.

Finding of fact No. 23:

On April 6, 1976, Ellen Langworthy went to the home of Pearl White, who is the maternal grandmother of Neil Langworthy's child. She left Neil's child with Pearl White and told her that she had a problem and would have to go away for a few days. She gave no date of her expected return.

Finding of fact No. 24:

On April 14, 1976, Ellen Langworthy turned herself in to the Skagit County Sheriff's Office after discussing the pending charges with her attorney. She was advised of her constitutional rights and refused to speak to the officers except to indicate her name, address and her nickname of "Elbow."

Finding of fact No. 25:

Neil Langworthy has a pickup truck with a standard transmission. While he was incarcerated, Steve Michaels would use Neil Langworthy's truck and leave his car,

which has an automatic transmission, with Ellen Langworthy, who did not know how to drive a standard transmission at that point.

Finding of fact No. 26:

Steve Michaels had been living with the Langworthys off and on, but moved from their house on April 1st, when Linda Grimes moved in to live with Ellen Langworthy.

Finding of fact No. 27:

On April 2, 1976, Linda Grimes taught Ellen Langworthy how to drive the truck with the standard transmission.

Finding of fact No. 28:

Over fifty percent of the inmates in the Skagit County Jail on April 3, 1976, used drugs. Some of these inmates were in various stages of withdrawal at that time.

The court's findings and evidence, direct and circumstantial introduced in the trial, furnish substantial evidence from which it can be inferred that the defendants knew that the cigarettes delivered to the Skagit County Jail contained heroin.

Both defendants admit that Ellen gave Neil a package of cigarettes several hours before he requested the jailer make the initial long–distance phone call to Ellen requesting cigarettes. The defendants both testified that at the time Ellen offered to give Neil $5 for additional cigarettes, he refused the money for he felt he could make his last 7 days in jail without further cigarettes, feeling that the package of cigarettes that Ellen had left him would be adequate. Ellen testified, however, that she did leave the $5 at the jail, without Neil's knowledge, and asked to have it put in Neil's box. $5.38 was found in Neil's box when the contraband was discovered less than 24 hours after Ellen left the money.

From the above evidence any ordinary person could infer that Neil was arranging for delivery of heroin to himself in the jail. Neil had used heroin before. At the time he initiated the plan by arranging for the jailer to make phone

calls to Ellen requesting cigarettes, he had at least one package of cigarettes in his possession and $5.38 in his box with which to purchase additional ones. At 4 p.m., April 2, he tells Ellen he doesn't need $5 for additional cigarettes, but 2 hours later he desperately needs them—so much so that he initiates two long–distance phone calls.

The obvious inference is that Neil had plenty of plain cigarettes but wanted cigarettes containing heroin, a disposable syringe and other drug paraphernalia, later discovered in the delivered carton. The circumstantial evidence is overwhelming that Neil had knowledge of the heroin plan which was consummated but unfortunately for him, discovered.

The defendant Ellen had the same knowledge as Neil. Hours before his arranged long–distance phone calls she had (1) left a package of cigarettes with him, (2) he had refused an additional $5 because he indicated he could make it for the final 7 days of his confinement, and (3) she left $5 cash to be placed in his box.

When the jailers called saying how desperate Neil was for cigarettes—why wouldn't she simply tell them that he had a package of cigarettes or that she had left $5 in his box a few hours earlier which could be used for the purchase of cigarettes. Instead she said nothing but jumped into her car in Anacortes, just happened to find the carton of contraband in the defendants' truck and drove down to the Skagit County Jail. She previously had been unable to drive this truck because it had a stick shift. Miraculously on April 2, the day of her jail visit, a friend taught her how to drive the truck, according to Ellen's testimony. She apparently needed this testimony to explain how she happened to find the contraband on the seat of the truck by chance.

Following discovery of the contraband at the jail, Ellen abruptly leaves work, drops off Neil's child with Neil's maternal grandmother saying she would be gone for a few days, and flees the area. Eleven days later she turns herself into the Skagit County Sheriff's Office after seeing an attorney.

From this evidence the only inference that can be drawn is that Ellen had knowledge every step of the way that the carton of cigarettes contained contraband. When the heroin was discovered in the jail she fled and remained in hiding for 11 days. Her actions are totally inconsistent with her innocence or lack of knowledge of the conspiracy.

The trial judge succinctly summed up the evidence when he concluded his opinion by stating:

> There is only one logical conclusion to draw from the testimony in this matter and the evidence is such as to persuade me beyond reasonable doubt that the delivery of this heroin by Ellen Langworthy to the county jail for and on behalf of Neil was done as the result of a specific, deliberate planned agreement between the parties and I, therefore, find them guilty of the charge set forth in the information.

In *Sears v. International Brotherhood of Teamsters, Local 524,* 8 Wn.2d 447, 112 P.2d 850 (1941), the court held that conspiracies need not be established by direct or positive evidence and in fact seldom are susceptible of such proof. The court held that conspiracies may be proven by circumstantial evidence or be established by inferences like any other disputed fact.

We agree with the trial judge that there was sufficient direct and circumstantial evidence to prove beyond all reasonable doubt that there was a meeting of the minds and cooperative conduct on the part of Neil and Ellen Langworthy to convict each of them of the crime of conspiracy to deliver a controlled substance under RCW 69.50.407.

ISSUE 3: Admission of police officers' testimony regarding long–distance telephone calls to Ellen Langworthy.

Ellen Langworthy argues the trial court erred in admitting the testimony of the two jailers reciting that Neil Langworthy requested they place long–distance calls to Ellen informing her that Neil was in need of cigarettes and wanted her to deliver some to him immediately at the

Skagit County Jail. It is Ellen's position that there had been no substantial evidence establishing the existence of a conspiracy at the time this testimony was admitted and, therefore, could not be admissible at that point in time against Ellen, absent independent proof of the existence of the conspiracy. Ellen cites *State v. McGonigle,* 144 Wash. 252, 258 P. 16 (1927), for the proposition that declarations and acts of co-conspirators are not admissible until such time as a prima facie case of conspiracy has been demonstrated by substantial evidence. The record establishes that the trial court, on objection of Ellen's attorney, did not consider the jailers' phone testimony at the time it was offered.

> BY THE COURT: This is a non-jury case, in that respect, I suppose it is both theoretically and practically easier for a Court to disregard any evidence which is introduced improperly or not in proper order, therefore, I will deny the motion to strike at this time but I will indicate to counsel at least at this point in time, *until there is more proof I will disregard this testimony which tends to implicate the defendant, Ellen Langworthy, in an irregular or improper act.*

(Italics ours.)

■ Although *State v. McGonigle, supra,* can be cited for the proposition that declarations and acts of co-conspirators are inadmissible until such time as a prima facie case has been demonstrated and as such is representative of the general rule (46 A.L.R.3d 1148), the rule in *McGonigle* is not so narrow as defendants would paint it. The rule in *McGonigle* goes further to state that the determination of whether a prima facie case for conspiracy exists is for the trial court judge in an exercise of his discretion. *State ex rel. Hamilton v. Standard Oil Co.,* 190 Wash. 496, 68 P.2d 1031 (1937); 46 A.L.R.3d 1156.

In the subject case it is clear the jailers' testimony pertaining to the phone calls was not considered when defendant objected but was only considered, if at all, when the trial judge was convinced there was sufficient proof of the

conspiracy. The trial court's actions are consistent with the rule enunciated in *McGonigle,* and we find no error.

We conclude that the defendants were properly charged and convicted under RCW 69.50.407 of the Uniform Controlled Substances Act.

We affirm.

CALLOW, J., concurs.

ANDERSEN, A.C.J. (concurring in the result)—I concur on the basis that the uncontroverted findings of fact are sufficient to sustain the defendant's convictions under RCW 69.50.407, the conspiracy section of the Uniform Controlled Substances Act, and that under the reasoning of *State v. Carroll,* 81 Wn.2d 95, 99, 500 P.2d 115 (1972) that section of the act is constitutional.

Reconsideration denied October 17, 1978.

Review granted by Supreme Court February 16, 1979.