[No. 7289-4-III. Division Three. June 4, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. CESAR GUADALUPE CASAREZ-GASTELUM, *Appellant.*

*Cesar Guadalupe Casarez–Gastelum,* pro se, *Antonio Salazar,* and *Carol L. Edward,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Donald E. Kresse, Jr., Deputy,* for respondent.

McInturff, C.J.—Cesar Casarez–Gastelum appeals his convictions of one count conspiracy to sell a controlled substance, heroin, for profit (RCW 69.50.407, .410) and one count conspiracy to possess with intent to deliver a controlled substance (RCW 69.50.407, .401(a)). He raises issues concerning the legality of his arrest and subsequent searches made of his person, car and apartment. We affirm.

On May 1, 1985, a special task force of the federal Drug Enforcement Administration (DEA) began operations in Yakima County to investigate and eradicate the distribution of drugs, particularly black tar heroin, in the Yakima area. Officers from the DEA, Yakima County Sheriff's Office, Yakima Police Department, and the Washington State Patrol participated, as well as a group from the Tri–Cities and Benton County. Detective Terry Carlson was assigned to the unit and, as part of his duties, participated in an undercover buy of heroin.

The controlled purchase occurred April 6, 1985, between Mr. Carlson and Alvaro Partida, also known as Chino, at the Roadrunner Mini Mart on Fruitvale Avenue, in Yakima. Mr. Carlson purchased 3 grams of heroin, at $300 per gram, and paid for it with nine marked $100 bills. After the sale was completed, Mr. Carlson asked Mr. Partida if it would be possible to contact him by phone if he wished to arrange any further transactions. Mr. Partida wrote a number on a piece of paper and told him to call any time he

wanted to purchase heroin. He further stated if he was not available, Mr. Carlson was to ask for "El Perico" (later identified as the defendant), who would arrange the transaction.

The task force attempted to use the number, but it had been disconnected. The number was registered to a Miguel Arce, at 25 Chicago Avenue, Apt. 4, in Yakima.

During this same operation, the task force was obtaining information on the activities of Mr. Partida and the defendant from a criminal informant, Carlos Orozco. He was acquainted with both suspects, knew the defendant as "Perico", and knew the two men lived together at apartment 4. Mr. Orozco also introduced Detective Carlson to Mr. Partida and was present at the mini–mart when the controlled buy was made.

The task force confirmed the defendant's identity as El Perico through Immigration and Naturalization Service. When Mr. Orozco told the task force the defendant was planning to drive to California the weekend of May 10 to purchase 20 ounces of heroin, they increased their intermittent surveillance of him to 24 hours a day. During that period the defendant was observed traveling throughout the city, either by himself or accompanied by Mr. Partida, to locations known to the task force as hangouts for Mexican drug traffickers. The defendant also was observed in a newly purchased 1984 black Thunderbird. One of the men the defendant met with was Roberto Guiterrez, a/k/a Nick Garcia, a/k/a Nick Guiterrez, known to be a heroin distributor for Mr. Partida or the defendant. Mr. Orozco also informed the task force the defendant would fly back from California.

A warrantless arrest of the two men occurred May 12, 1985, at approximately 11:30 p.m., when the defendant and Mr. Partida were observed by members of the task force traveling southbound in the Thunderbird on Highway 97 over Satus Pass. After the arrest, the Thunderbird was sealed and immediately returned to Yakima to a locked garage.

At the time of the arrest the defendant was frisked and a wallet was removed from his person and searched. Inside the wallet the police found $788, including a marked $100 bill that had been used by Detective Carlson to purchase the heroin during the controlled buy.

The next day, a warrant was obtained to search defendant's car; $800 was recovered from the glove compartment and an additional $20,000 was found underneath the carpet of the back seat. The defendant did not dispute the presence of the money, but claimed it was from his father, to be used to purchase a home.

After a bench trial, the defendant was found guilty; the sentence imposed was outside the standard range: 48 months on count 1, 12 months on count 2, to run concurrently.

The defendant first raises issues concerning the validity of the arrest and subsequent searches and seizures. He argues there was not probable cause to justify the stop of the defendant's vehicle, that the warrantless search of his wallet was not justified, and that the warrants obtained to search the car and the apartment were unjustified under *Aguilar–Spinelli*. (*See Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964).)

### WARRANTLESS ARREST[1]

■ An arrest without a warrant "must stand upon firmer ground than mere suspicion". *Wong Sun v. United States*, 371 U.S. 471, 479, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). The arresting officer must possess probable cause which would warrant a reasonable person to conclude a felony has been committed. *Wong Sun*, 371 U.S. at 479 (quoting *Carroll v. United States*, 267 U.S. 132, 162, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925)); *State v. Smith*, 102 Wn.2d 449, 453, 688 P.2d 146 (1984). In the

---

[1]For purposes of this analysis and because both parties agree, the stop of defendant's car on the Satus Pass highway is assumed to be a full–fledged arrest.

context of these facts, the arresting officer must have probable cause to believe the defendant had conspired with one or more persons to engage in criminal activity, *i.e.*, the sale of heroin for profit, RCW 69.50.410,[2] RCW 69.50.407[3] (count 1) and conspiracy to possess heroin with intent to deliver, RCW 69.50.407; RCW 69.50.401(a)[4] (count 2).

The State argues the information supplied by the informant, coupled with their own investigation and surveillance of the defendant, provided them with sufficient evidence to establish probable cause to support the arrest.

> A conspiracy is "a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose . . ." It is a partnership in criminal purposes. The gist of the crime is the confederation or combination of minds.

> A conspiracy is . . . the result of the agreement and not the agreement itself. No formal agreement between the parties is essential to the formation of the conspiracy for the agreement may be shown "if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose."

> . . .

> . . . Proof of a conspiracy may be by circumstantial evidence, often times by overt acts alone, in which case much is left to the discretion of the trial court.

(Footnotes and citations omitted.) *Marino v. United*

---

[2] RCW 69.50.410(1) provides in part:

"Except as authorized by this chapter it shall be unlawful for any person to sell for profit any controlled substance . . . classified in Schedule I, RCW 69.50-.204 . . ."

[3] RCW 69.50.407 provides:

"Any person who attempts or conspires to commit any offense defined in this chapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

[4] RCW 69.50.401(a) provides:

"Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."

*States,* 91 F.2d 691, 693–98, 113 A.L.R. 975 (9th Cir. 1937) (cited in *State v. Gallagher,* 15 Wn. App. 267, 277, 549 P.2d 499 (1976)), *cert. denied sub nom. Gullo v. United States,* 302 U.S. 764, 82 L. Ed. 593, 58 S. Ct. 410 (1938).

■ Once a conspiracy has been established, the State must introduce evidence which tends to show beyond a reasonable doubt the defendant had at least a "slight" connection with the conspiracy. *United States v. Brandon,* 633 F.2d 773, 780 (9th Cir. 1980) and cases cited therein.

"slight" evidence must be of the quality which will reasonably support a conclusion that the particular defendant in question wilfully participated in the unlawful plan with the intent to further some object or purpose of the conspiracy.

*United States v. Freie,* 545 F.2d 1217, 1222 (9th Cir. 1976) (citing *Glasser v. United States,* 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457 (1942)), *cert. denied sub nom. Gangadean v. United States,* 430 U.S. 966, 52 L. Ed. 2d 356, 97 S. Ct. 1645 (1977).

Evidence of the agreement between the defendant and Mr. Partida included the informant's statements, the information obtained by Detective Carlson during the controlled buy regarding the defendant's involvement and the surveillance of the defendant conducted by the task force. The pertinent question is whether defendant's act of driving about 20 miles in a southerly direction, accompanied by a known trafficker of heroin, was sufficiently "slight" to connect him to an illegal result, the sale of drugs. *See State v. Dictado,* 102 Wn.2d 277, 284, 687 P.2d 172 (1984). We note that in the majority of federal decisions, no overt act is needed to convict under federal drug conspiracy laws. *See People v. Crowson,* 33 Cal. 3d 623, 660 P.2d 389, 190 Cal. Rptr. 165 (1983); *United States v. Lee,* 622 F.2d 787, *reh'g denied,* 633 F.2d 582 (5th Cir. 1980), *cert. denied,* 451 U.S. 913, 68 L. Ed. 2d 303, 101 S. Ct. 1987 (1981); *United States v. Ricardo,* 619 F.2d 1124 (5th Cir.), *cert. denied,* 449 U.S. 1063, 66 L. Ed. 2d 607, 101 S. Ct. 789 (1980).

The defendant contends the State did not have sufficient

evidence to establish a "substantial step" had been taken toward the commission of a crime. However, the cases cited in support of his contention relate more accurately toward the establishment of an attempted crime rather than a conspiracy.

RCW 69.50.407 is a specific statute relating to conspiracies involving controlled substances and such an act of conspiracy must be charged under that statute to the exclusion of former RCW 9.22.010 which deals with conspiracy in general. *State v. Langworthy*, 20 Wn. App. 822, 828, 583 P.2d 1231 (1978), *rev'd on other grounds*, 92 Wn.2d 148, 594 P.2d 908 (1979). (RCW 9A.28.040 has since superseded RCW 9.22.010.) RCW 69.50.407 does not contain a provision which refers to "substantial step", nor has the defendant provided any law which shows a connection between the two conspiracy statutes. Moreover, RCW 69.50.407 contains almost identical language to that found in 21 U.S.C. § 846 and under federal interpretation, no "substantial step" need be taken. Applying the "slight" evidence rule, we conclude the task force had sufficient probable cause to make a warrantless arrest of the defendant.[5]

Pursuant to RCW 2.06.040, the remaining contentions and the court's answers to those contentions, having no precedential value, will not be published.

GREEN and MUNSON, JJ., concur.

---

[5]We reiterate the evidence set out at the beginning of this opinion. It includes the undercover buy by Detective Carlson and Mr. Partida's reference to Mr. Gastelum ("Perico") as a source of cocaine; the surveillance of Mr. Gastelum by the task force; his association with Mr. Guiterrez, known to the police as a heroin distributor; his frequenting of hangouts known to be centers of drug trafficking, either by himself or with Mr. Partida.