# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
)　DIVISION ONE
　　　　Appellant, )
) No. 67874-4-I
　　　v. )
) ORDER AMENDING OPINION
KEITH THOMAS BLAIR, ) AND DENYING MOTION FOR
) RECONSIDERATION
　　　　Respondent. )
_____)

The respondent, Keith Thomas Blair, filed a motion for reconsideration of this court's decision filed February 25, 2013. A majority of the panel hearing the case has considered the motion, decided to amend the opinion, and has determined that the motion should be denied. Now, therefore, it is hereby

ORDERED that:

1. The first sentence at the top of page 12 of the slip opinion shall be replaced with the following sentence: "Thus, the State argued, at a minimum, the intent to deliver element of the underlying crime was satisfied through evidence evincing Dunham's planned delivery of marijuana to Yates outside of the jail."

2. The second sentence of the first full paragraph on page 12 of the slip opinion shall be replaced with the following sentence: "We disagree with Blair's contention that the State was required to establish that an agreement existed between Blair and Yates to possess with intent to deliver marijuana to individuals other than Yates or Blair."

3. The motion for reconsideration is denied.

Dated this __18th__ day of __April__, 2013.

_____ Dwyer, J.

___Spearman, A.C.J.___    ___(Gross)___

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2013 APR 18 PM 1:54

STATE OF WASHINGTON,                    )
                                        )   DIVISION ONE
                    Appellant,          )
                                        )   No. 67874-4-I
          v.                            )
                                        )   UNPUBLISHED OPINION
KEITH THOMAS BLAIR,                     )
                                        )
                    Respondent.         )   FILED: February 25, 2013
_____)

DWYER, J. — Keith Blair was convicted of conspiracy to commit violation of

the Uniform Controlled Substances Act–possession with intent to deliver

marijuana. The trial court thereafter granted Blair's motion for arrest of judgment,

ruling that there was insufficient evidence of a conspiratorial agreement. It

entered an order vacating the jury verdict and dismissing the case with prejudice.

In that same order, it also granted, in the alternative, Blair's motion for new trial.

The State appeals, contending that the trial court erred by dismissing the

conspiracy conviction. The State further asserts that the trial court's written order

granting a new trial was erroneous because the trial court did not address the

new trial motion in its oral ruling. We conclude that the State provided sufficient

evidence to prove a conspiratorial agreement and that, as Blair concedes, the

inclusion of the new trial ruling in the court's written order was the result of a

ministerial error. Accordingly, we reverse the order arresting judgment and

No. 67874-4-I/2

remand the cause to the trial court with directions to strike the portion of its order granting Blair's motion for new trial and to otherwise further proceed in accordance with this decision.

I

On February 19, 2011, King County Sheriff's Detective Cary Coblantz listened to a recording of a telephone call made by Keith Blair, an inmate at the King County jail. The telephone conversation was recorded by the jail and was stipulated by the parties to have been between Keith Blair and his wife, Rachel Dunham. Pertinent excerpts from the telephone conversation are as follows:[1]

> BLAIR: Somebody is getting released tomorrow.
> DUNHAM: Yeah.
> BLAIR: (unintelligible) I need you to come down here at 5:30 p.m. and get that quart . . . of
> DUNHAM: Of?
> BLAIR: Green.
> DUNHAM: Green?
> BLAIR: Yeah.
> DUNHAM: I'm sorry.
> BLAIR: Okay. Can you do that?
> DUNHAM: Yeah.
> BLAIR: I'll give him (unintelligible) number to get a hold of you.
> DUNHAM: He's gonna be released at 5:30?
> BLAIR: Yeah, p.m.
> DUNHAM: Why 5:30?
> BLAIR: I don't know. That's when they release people. So I need you to be here okay?
> DUNHAM: Okay. But . . . okay.
> BLAIR: Okay. Thank you.
> [. . .]

---

[1] The jail telephone recording was played to the jury and a redacted transcript of the recording was admitted for illustrative purposes. Detective Coblantz testified that the transcript created by the jail is not entirely accurate and includes typographical errors and omitted statements. As a result, many statements in the transcript were marked as "unintelligible." At oral argument, the State urged this court to refer to Blair's briefing for an accurate account of Blair and Dunham's telephone conversation. Accordingly, the excerpts contained herein are quoted directly from Blair's briefing.

-2-

> BLAIR: (unintelligible) phone call. I'm going to give dude your phone number right now, so make sure you're here at 5:30.
> DUNHAM: What's his name.
> BLAIR: I don't know. He'll call you.
> DUNHAM: You don't know?
> BLAIR: (unintelligible)
> DUNHAM: Dude, it's a set up Keith. Serious. Hello? I can't hear you.
> BLAIR: Hold on. (unintelligible) But uh (unintelligible)
> DUNHAM: It's a set up.
> BLAIR: No it's not.
> DUNHAM: Yeah, it is.
> BLAIR: It's not.
> DUNHAM: You don't even know his name.
> BLAIR: Alright, I'll find out right now. Just trust me okay?
> DUNHAM: Okay.

Br. of Resp't at 2-3.

After Blair and Dunham discussed other matters, Blair said, "His name is Chris." Dunham replied, "Huh?" Blair responded, "Chris." Blair and Dunham continued to talk about other topics, after which the following exchange took place:

> BLAIR: Um, shred that up and put it in a rubber.
> DUNHAM: Huh?
> BLAIR: Shred that up and put it in a rubber.
> DUNHAM: Shred what?
> BLAIR: When you come here at 5:30. Tear it up, put it in a rubber.
> DUNHAM: Tear what up?
> BLAIR: What are you coming here for tomorrow?
> DUNHAM: What do I tear up? I don't get it.
> BLAIR: Forty.
> DUNHAM: Yeah, I understand.
> BLAIR: Okay. Got it?
> DUNHAM: Kinda.
> BLAIR: (unintelligible)
> DUNHAM: Can you call me?
> BLAIR: Can I call you?
> DUNHAM: Yeah, like the morning.
> BLAIR: (unintelligible) maybe.
> DUNHAM: Before you go to work.

BLAIR: I'll try to, why?
DUNHAM: Just so I can be . . . I dunno.
BLAIR: You know like when we go to . . .
DUNHAM: Yeah.
BLAIR: Yeah.
DUNHAM: That's what you want?
BLAIR: Yeah. Okay?
DUNHAM: Okay. Does (unintelligible) monetary.
BLAIR: (unintelligible) yeah, 40 dollars worth.
[. . .]
BLAIR: Just get it ready and give it to him, yeah. Okay?
DUNHAM: Okay.

Br. of Resp't at 3-4.

Detective Coblantz testified that based on his experience, the term "green" often refers to marijuana and the term "40" typically signifies the dollar amount of a controlled substance that a person seeks to procure. After listening to the recording of the telephone call, Detective Coblantz contacted Sergeant Catey Hicks, a member of the jail's special investigations unit. Sergeant Hicks determined that an individual named Christopher Yates was the only inmate with the first name of "Chris" or "Christopher" who was scheduled for a temporary release from the jail the following day, February 20, 2011. Yates was to be released from 10:00 a.m. to 6:00 p.m. that day. At the time, Yates and Blair were housed together in the same dorm in the jail.

On February 20, 2011 at 5:15 p.m., Sergeant Hicks and Detective Coblantz set up surveillance outside the jail, where they suspected a meeting would take place between Dunham and Yates. At approximately 5:50 p.m., Detective Coblantz observed a black Acura park across the street from the jail's intake doors. Soon after, he noticed Christopher Yates and a woman exit the car. Yates smoked a cigarette and looked around for a few minutes. At around

6:00 p.m., the time at which Yates was required to return from his release, Yates and the woman ran across the street and entered the jail.[2] Dunham drove up shortly thereafter, parking her car next to the intake doors. At this point, the woman who accompanied Yates into the jail walked out of the jail, passing Dunham's car, and drove off in the Acura. There was no contact between Dunham and this woman.

Dunham continued to sit alone in her car for approximately 10 to 15 minutes. Detective Coblantz then walked to the car, seized it, and had it impounded. A few days later, Detective Coblantz searched the car pursuant to a search warrant and found a package of cigarettes in a compartment therein. A condom containing a bag of 2.5 grams of marijuana was wrapped tightly inside the package.

Blair was charged with conspiracy to commit violation of the Uniform Controlled Substances Act–possession with intent to deliver marijuana and with attempted introducing contraband in the second degree. The jury found Blair guilty on the conspiracy charge and acquitted him on the attempted introduction of contraband charge.

After the verdict, Blair moved for a new trial or for arrest of judgment.[3] In its oral ruling, the trial court granted the motion for arrest of judgment based upon the lack of sufficient evidence of a conspiratorial agreement. The trial court did

---

[2] No contraband was found when the jail staff conducted a search of Yates upon his return.

[3] Blair moved for a new trial based on the following grounds: "(1) Error of law occurring at the trial and objected to at the time by the defendant, CrR 7.5(a)(6); (2) That the verdict or decision is contrary to law and the evidence, CrR7.5(a)(7); and (3) That substantial justice has not been done, CrR 7.5(a)(8)."

not orally rule on Blair's alternative motion for new trial. Its written order, however, granted Blair's motion for arrest of judgment, and, in the alternative, granted his motion for new trial. No findings of fact or conclusions of law were entered.

The State appeals from the trial court's order granting Blair's motion for arrest of judgment or, in the alternative, for a new trial.

II

The State contends that sufficient evidence supports Blair's conspiracy conviction, and, therefore, that the trial court erred by dismissing the case for lack of sufficient evidence proving that Blair entered into an agreement with another to possess marijuana with intent to deliver. We agree.

Criminal Rule (CrR) 7.4(a)(3) allows a defendant to move to arrest judgment for "insufficiency of the proof of a material element of the crime." In ruling on a motion for arrest of judgment, the trial court may not weigh the evidence; instead, it may only test or examine the sufficiency thereof. State v. Randecker, 79 Wn.2d 512, 517, 487 P.2d 1295 (1971); State v. Coleman, 54 Wn. App. 742, 746-47, 775 P.2d 986 (1989). The evidence presented in a criminal trial is legally sufficient to convict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements of the charged crime beyond a reasonable doubt. State v. Longshore, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000).

Review of a trial court decision on a motion for arrest of judgment requires the appellate court to engage in the same sufficiency inquiry as does the trial

court. Longshore, 141 Wn.2d at 420. "A claim for insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Such inferences must be drawn in favor of the State and interpreted most strongly against the defendant. Salinas, 119 Wn.2d at 201. The appellate court defers to the fact finder to resolve issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Gerber, 28 Wn. App. 214, 216, 622 P.2d 888 (1981) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

The State must prove all elements of a crime beyond a reasonable doubt. State v. McCullum, 98 Wn.2d 484, 494, 656 P.2d 1064 (1983). Here, the information charges Blair with conspiracy to commit violation of the Uniform Controlled Substances Act in violation of RCW 69.50.401,[4] RCW 69.50.407,[5] and RCW 9A.28.040. Pursuant to RCW 9A.28.040(1), "[a] person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement."

For purposes of the conspiracy statutes, RCW 9A.28.040 and RCW 69.50.407, the State must prove that the co-conspirators entered into an actual

---

[4] RCW 69.50.401(1) provides: "Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."

[5] RCW 69.50.407 provides: "Any person who attempts or conspires to commit any offense defined in this chapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

agreement that was genuine or bilateral; it is not enough for one conspirator to unilaterally believe that another agreed to commit a criminal act. State v. Pacheco, 125 Wn.2d 150, 159, 882 P.2d 183 (1994); see also State v. Butler, 165 Wn. App. 820, 834, 269 P.3d 315 (2012); State v. Stark, 158 Wn. App. 952, 962-63, 244 P.3d 433 (2010), review denied, 171 Wn.2d 1017 (2011). However, it is unnecessary to prove that the agreement was formally expressed. State v. Barnes, 85 Wn. App. 638, 664, 932 P.2d 669 (1997); State v. Smith, 65 Wn. App. 468, 471, 828 P.2d 654 (1992). Moreover, it need not be shown that the co-conspirators came together in agreement or were acquainted with one another. State v. Stewart, 32 Wash. 103, 109, 72 P.1026 (1903).

The State may prove by circumstantial evidence the existence of an agreement. State v. King, 113 Wn. App. 243, 269, 54 P.3d 1218 (2002); State v. Culver, 36 Wn. App. 524, 528, 675 P.2d 622 (1984). Such circumstantial evidence may be in the form of declarations, acts, or conduct of the parties. Barnes, 85 Wn. App. at 664; State v. Gallagher, 15 Wn. App. 267, 277–78, 549 P.2d 499 (1976). Evidence of "'concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose'" is sufficient to prove agreement. State v. Casarez–Gastelum, 48 Wn. App. 112, 116, 738 P.2d 303 (1987) (internal quotation marks omitted) (quoting Marino v. United States, 91 F.2d 691, 694 (9th Cir. 1937)).

Here, the State asserts that the trial court erred in granting the motion for arrest of judgment.[6] Specifically, it contends that the State presented to the jury sufficient evidence of an agreement between Blair and Yates. We agree. Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found that a conspiratorial agreement existed between Blair and Yates to possess marijuana with intent to deliver. The State proffered sufficient circumstantial evidence of an agreement, as evinced by the parties' actions and conduct, as well as the recorded telephone call between Dunham and Blair.

First, Christopher Yates was the only inmate at King County jail with the name "Chris" or "Christopher" who was to be released on February 20, 2011. This fact coincides with Blair's conversation with Dunham, in which Blair informed Dunham that a person named "Chris" would contact her. Further, although it is unnecessary to show that conspirators come together or are acquainted with one another, Stewart, 32 Wash. at 109, a rational fact finder could infer that Yates and Blair did in fact come together because they were housed in the same dorm at the jail. Such an inference would suggest that Yates and Blair had the opportunity to engage in a conspiratorial agreement.

Second, Yates's conduct prior to reentering the jail could lead a rational fact finder to conclude that he was acting in conformity with a collaborated plan to

---

[6] The State also asserts that the trial court applied an improper legal standard when contemplating what an "agreement" necessitates under the conspiracy statutes. This contention mischaracterizes the trial court's examination of the evidence prior to ruling on the motion. The record reveals that the trial judge understood that circumstantial evidence—not solely direct evidence—may be considered, and that the agreement need not be formal. There is no indication that the trial judge required proof of a face-to-face, explicit agreement. Instead, the trial court was aware that an "actual" agreement was required and that a conspirator's mere belief that such an agreement existed is not sufficient. The trial court therefore did not rely upon the incorrect legal standard in its posttrial ruling on the motion for arrest of judgment.

which he had agreed. Yates appeared at the jail receiving area several minutes prior to his scheduled return from temporary release. He was observed smoking a cigarette and looking around, possibly waiting for Dunham to arrive. He finally ran across the street to the jail entrance at 6:00 p.m., having lingered until the last moment before he was due to return from his temporary release. This evidence of Yates's conduct could lead a jury to infer that he had agreed with Blair to meet Dunham outside the jail in order to obtain marijuana from her; accordingly, the State proffered sufficient evidence from which a fact finder could determine that Yates was involved in a concerted plan to possess with intent to deliver, and that a bilateral agreement was entered into between Yates and Blair.

Finally, evidence of Dunham's actions also suggests that an agreement was in place between Blair and Yates because her conduct conformed closely to Blair's instructions to her as to how to make contact with Yates. Dunham arrived at the jail shortly after 6:00 p.m. and remained in her car for approximately 10 to 15 minutes without contacting another person. A jury could infer that she was waiting to meet with Yates after having arrived behind schedule. Further, marijuana was tightly packed inside a condom in a package in her car, a fact that also correlates with the plan discussed the previous day in which Blair instructed Dunham to bring "green" packed in a "rubber." In accordance with Casarez–Gastelum, 48 Wn. App. at 116, these facts—which show evidence of "concert of action" such that all parties appear to work together under a single design—are sufficient to prove the existence of an agreement.

- 10 -

Nevertheless, Blair argues that certain evidence should militate against a "concert of action" inference. Blair directed Dunham to come to the jail at 5:30 p.m. However, Dunham arrived shortly after 6:00 p.m. Moreover, Blair told Dunham on the telephone recording that Yates was to be released from jail the following day at 5:30 p.m., but Yates was released at 10:00 a.m. and was required to return at 6:00 p.m. Yates also did not appear outside of the jail until 5:50 p.m. It is for the jury to consider and weigh the evidence, however. The evidence pointed to by Blair would not preclude a rational fact finder from inferring that an agreement had been made, and the jury did just that.

At oral argument, counsel for Blair raised an additional argument not expressly addressed in its briefing on appeal. Specifically, counsel contended that in order to satisfy each element of the underlying crime of conspiracy, the State was required to prove that Yates intended to deliver the marijuana to others after Dunham transferred it to him, and that Yates and Blair agreed that Yates would deliver the marijuana once he was in receipt of it. Blair's counsel maintained that because the State failed to proffer evidence establishing an agreement whereby Yates would deliver the marijuana to others, the State lacked sufficient evidence of an agreement.

The State responded that it had presented sufficient evidence of agreement to possess marijuana with intent to deliver. The State argued that evidence demonstrating an agreement to deliver marijuana to individuals other than Yates—whether inside the jail or elsewhere—is not legally required because a delivery would have occurred once Dunham transferred the marijuana to Yates.

Thus, the State argued, at a minimum, the delivery element of the underlying crime was satisfied through evidence evincing Dunham's planned delivery of marijuana to Yates outside of the jail.

We exercise our discretion to address Blair's additional contention raised for the first time at oral argument. We disagree with Blair's contention that the State was required to establish that an agreement existed between Blair and Yates to deliver marijuana to individuals other than Yates or Blair. The intent to deliver element was satisfied by evidence of an agreement between Blair and Yates whereby Dunham would deliver the marijuana she possessed to Yates outside of the jail. Evidence that Yates and Blair agreed that the marijuana would be delivered beyond Yates's possession once he received it was not necessary. A rational finder of fact could have found that a delivery was intended to occur upon Yates's receipt of the marijuana before reentering the jail.

Based on the series of events that unfolded, a rational fact-finder could reasonably draw the inference that Blair and Yates agreed to possess marijuana with the intent to deliver it. Viewing the facts and inferences from the facts in the light most favorable to the State, we conclude that the State presented sufficient evidence of an agreement, and, thus, of a conspiracy. Accordingly, we reverse the order for arrest of judgment.

III

The State further contends that the trial court erred by entering a written order that includes an alternative grant of a new trial, which the trial court

- 12 -

"expressly rejected" in its oral ruling.[7] Blair concedes that the trial court did not actually rule on his motion for a new trial. He further concedes that the written order should not have included language granting this motion. He classifies this as a "ministerial error." The State does not address Blair's concession in its reply brief.

Upon review of the record, it appears that the trial court concluded that it was unnecessary to rule on the motion for new trial in the alternative, focusing instead on the grounds for the motion for arrest of judgment—sufficiency of the evidence. The trial court did so, it seems, because it intended to grant the remedy of dismissal—a greater form of relief. However, the trial court thereafter entered a written order that was not limited to the scope of the trial court's oral ruling.[8] We accept Blair's concession that this constituted a ministerial error.

We reverse the order arresting judgment. We remand to strike the portion of the order granting Blair's motion for new trial and for all necessary further proceedings.

We concur:

---

[7] The State's contention mischaracterizes the trial court's oral ruling. The trial court did not "reject" the argument that a new trial be based on the accomplice liability error; rather, the court declined to rule on Blair's motion for new trial.

[8] The written order states: "In the alternative, should the arrest of judgment be reversed, vacated or set aside, the Court hereby GRANTS the defense motion for a new trial, for the reasons set forth in the defense memorandum."