# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43039-8-II |
| Respondent, | |
| v. | |
| EDUARDO SANDOVAL, | Consolidated with |
| Appellant. | |
| In the Matter of the Personal Restraint Petition of: | No. 44780-1-II |
| EDUARDO SANDOVAL, | UNPUBLISHED OPINION |
| Petitioner. | |

WORSWICK, C.J. — After a jury trial, Eduardo Sandoval was convicted of first degree murder, first degree assault, and conspiracy to commit first degree murder. Sandoval appeals, arguing that the evidence is insufficient to support any of his convictions. We disagree and affirm. In a pro se personal restraint petition, Sandoval further challenges (1) the legality of his arrest, (2) the admissibility of his custodial statements, and (3) the State's authority to prosecute him. We dismiss the petition.

## FACTS

Sandoval was a member of a gang known as the Eastside Lokotes Sureños (ELS). Riding in a stolen van, other ELS members shot the passengers of a car, wounding Joshuah Love and killing his sister, Camille Love.

Two days before the Loves' shooting, an unknown person shot an ELS member named Naitaalii Toleafoa outside a bar in Tacoma. The ELS leader, Juan Zuniga, believed that Toleafoa had been shot by a member of the Pirus, a rival gang affiliated with the Bloods gang.

The day after Toleafoa's shooting, Sandoval and Antonio Gonzalez attended an ELS meeting. At the meeting, Zuniga announced that ELS would "retaliate on the people that shot [Toleafoa]." 16 Verbatim Report of Proceedings (VRP) at 1924. Zuniga had a stolen van ready for this purpose.

The ELS members met for a second meeting the following day. Zuniga assigned Gonzalez and Sandoval to look out for police and Bloods on Tacoma's "Eastside," while three other ELS members would shoot from the stolen van.

At the ELS meetings Zuniga did most of the talking, with little input from others. Gonzalez explained that he was obliged to participate in Zuniga's plan because "by being part of the gang, you have to be involved in stuff." 16 VRP at 1925. Likewise, Sandoval stated that he did not challenge Zuniga because "it's not in my authority to even go against his word." Ex. 5F at 7.

After the second meeting Gonzalez and Sandoval left in Gonzalez's sport utility vehicle, with Gonzalez's children in the back seat. They drove around and stopped at McKinley Park, where Gonzalez and Sandoval smoked marijuana and where they briefly encountered the three ELS members in the stolen van. Gonzalez and Sandoval then traveled around the Eastside "just seeing if there was any cops around and stuff." 16 VRP at 1937. They saw police parked at a KeyBank near 72nd Street and Portland Avenue, and Sandoval called Zuniga to relay this

information. After "just driving back and forth" for a time, Gonzalez parked at Boze Elementary School, where they smoked more marijuana. 16 VRP at 1939-40. Later, they went to a McDonald's drive-thru where they saw police cars with lights and sirens activated on 72nd Street.

After receiving a phone call telling them to leave the area, Gonzalez drove Sandoval home. The next day, one of the ELS members who had been in the stolen van told Gonzalez that they had shot the occupants of a red car near 56th Street and Portland Avenue because one of the occupants threw gang signs. Joshuah Love survived his gunshot wounds, but Camille Love died.

The investigation of the Loves' February 2010 shooting stalled until May 2010, when ELS members, with Gonzalez's assistance, killed Zuniga. Gonzalez pleaded guilty to first degree murder of Zuniga and promised to testify in both the Zuniga case and the Love case.

In September 2010, Sandoval's probation officer arrested him without a warrant at the Puyallup Fair. After being transferred to the custody of Tacoma police, Sandoval was advised of his *Miranda*[1] rights. Sandoval then gave a recorded statement that was later published at trial.

In the recorded statement, Sandoval said that, unlike Zuniga, he believed there was no basis to conclude that Bloods were responsible for Toleafoa's shooting. He stated "I would have never went along" with the plan to retaliate and that on the day of the Loves' shooting the ELS members drove around just because they were mad. Ex. 5F at 8. Sandoval further denied telling Zuniga about the presence of police and said he accompanied Gonzalez because he was sure Gonzalez would not have endangered his children.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3

By second amended information, the State charged Sandoval with first degree murder of Camille Love, first degree assault of Joshuah Love, and conspiracy to commit first degree murder. The State sought both firearm and gang sentencing enhancements for each count. The jury found Sandoval guilty on all three counts and further found in special verdicts that the State had proved facts supporting the sentence enhancements.

Sandoval appeals. He also filed a petition for a writ of habeas corpus, which the trial court transferred to us for consideration as a personal restraint petition. *See* CrR 7.8.

ANALYSIS

Sandoval argues that the evidence was insufficient to support his convictions (1) under an accomplice liability theory for first degree murder and first degree assault and (2) for conspiracy to commit first degree murder. We disagree.

When a defendant challenges the sufficiency of the evidence supporting his conviction, we examine the record to decide whether any rational fact finder could have found that the State proved each element of the offense beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). In a sufficiency of the evidence challenge, the defendant admits the truth of all the State's evidence; therefore we consider the evidence and all reasonable inferences from it in the light most favorable to the State. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Further, direct evidence and circumstantial evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

A.  *Complicity*

Sandoval argues that the evidence is insufficient to show that he was an accomplice to first degree murder or first degree assault. We disagree.

A defendant is liable as an accomplice for another person's crime if the defendant (1) "[a]ids or agrees to aid such other person in planning or committing it" and (2) has "knowledge that it will promote or facilitate the commission of the crime." RCW 9A.08.020(3)(a)(ii). Sandoval appears to claim that the evidence fails to show *both* (1) that he aided or agreed to aid the planning or commission of the shooting *and* (2) that he knew his conduct would promote or facilitate the shooting. We disagree.

1. *Aiding or Agreeing To Aid the Shooting*

First, Sandoval claims that the evidence fails to show that he "participated in the shooting in any way." Br. of Appellant at 15. But this framing distorts the issue. The actus reus of complicity is not *participation* but instead *aiding or agreeing to aid in the planning or commission of the crime.* RCW 9A.08.020(3)(a)(ii); *see State v. Roberts*, 142 Wn.2d 471, 502, 14 P.3d 713 (2000).

Here, the evidence is sufficient to prove that Sandoval aided *and* agreed to aid the planning or commission of the shooting. Given testimony that ELS members unquestioningly executed Zuniga's directives, the jury could reasonably infer that Sandoval agreed to aid the planning of the shooting during the meeting at which Zuniga directed him to look out for police and Bloods. Further, the jury could find that Sandoval actually aided the commission of the shooting by accompanying Gonzalez to the Eastside and advising Zuniga that police were

5

present. A rational trier of fact could have found, beyond a reasonable doubt, that Sandoval aided or agreed to aid the planning or commission of the shooting. *See* RCW 9A.08.020(3)(a)(ii).

Arguing to the contrary, Sandoval claims that the evidence supports his version of events: that (1) he "did not assent to and had no intent to assist in the shootings" and (2) he and Gonzalez disobeyed Zuniga by smoking marijuana in a parking lot when they were supposed to be acting as lookouts. Br. of Appellant at 15. But in a sufficiency of the evidence challenge, we consider the evidence in the light most favorable to the State. *Salinas*, 119 Wn.2d at 201.[2]

2. *Knowledge That His Conduct Would Promote or Facilitate the Crime*

Second, Sandoval appears to assert that the evidence also fails to establish the mens rea— i.e., that he knew his conduct would promote or facilitate the shooting. This assertion lacks merit.

The State elicited testimony that (1) Sandoval attended a gang meeting at which Zuniga announced a plan to retaliate for Toleafoa's shooting, and (2) the plan called for Sandoval to act as a lookout while other gang members would shoot from a stolen van. Because it is reasonable to infer that Sandoval knew the plan that Zuniga announced in his presence, a rational fact finder could find that the State proved beyond a reasonable doubt that Sandoval knew his actions as lookout would promote or facilitate the planned shooting. *See* RCW 9A.08.020(3)(a); *Roberts*, 142 Wn.2d at 513 (complicity requires merely general knowledge of the principal's crime, not

---

[2] Sandoval further asserts that no evidence showed (1) he was present at the scene of the shooting or (2) he was ready to assist in the shooting. But because Sandoval's complicity is shown through other evidence, we do not address these assertions.

specific knowledge of each element). With respect to his convictions for first degree murder and first degree assault, Sandoval's argument fails.

B.     *Conspiracy*

Sandoval next argues that the evidence is insufficient to support his conviction for conspiracy to commit first degree murder. We disagree.

A defendant is liable for criminal conspiracy "when, with intent that conduct constituting a crime be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement." RCW 9A.28.040(1). The requisite agreement must be a genuine confederation or combination of minds. *State v. Pacheco*, 125 Wn.2d 150, 155, 882 P.2d 183 (1994).

To prove a conspiracy, the State need not show a formal agreement. *State v. Wappenstein*, 67 Wash. 502, 509-10, 121 P. 989 (1912); *State v. Barnes*, 85 Wn. App. 638, 664, 932 P.2d 669 (1997). Instead, the existence of an agreement may be proven by evidence of a concert of action in which the parties work together understandingly to accomplish a common purpose. *State v. Casarez-Gastelum*, 48 Wn. App. 112, 116, 738 P.2d 303 (1987) (quoting *Marino v. United States*, 91 F.2d 691, 694 (9th Cir. 1937)). Because an agreement may be inferred from the parties' declarations and actions, circumstantial evidence may provide proof of a conspiracy. *Barnes*, 85 Wn. App. at 664.

Here, the evidence is sufficient for a rational trier of fact to conclude that Sandoval agreed to be a lookout. The State elicited testimony that (1) Sandoval was an ELS member, (2)

ELS members unquestioningly executed Zuniga's orders, and (3) Sandoval and Gonzalez patrolled the Eastside as lookouts, as Zuniga had ordered them to do.

However, Sandoval claims the evidence is insufficient to prove that he agreed to a plan, *intending to commit murder*. We disagree.

When a defendant is charged with conspiracy to commit first degree murder, the State must prove that the defendant was a party to an agreement to commit first degree murder. *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997). A person commits first degree murder if he kills another (a) with premeditated intent, (b) by engaging in conduct creating a grave risk of death under circumstances manifesting an extreme indifference to human life, or (c) during certain forms of felony murder. RCW 9A.32.030(1).

Sufficient evidence supports Sandoval's conviction for conspiracy to commit first degree murder under circumstances manifesting an extreme indifference to human life. Zuniga's plan called for Gonzalez and Sandoval to act as lookouts while three other ELS members would shoot at Bloods from a stolen van. Although Sandoval claimed he intended to avoid involvement in the shooting, the jury was free to disbelieve his claim. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Thus a rational trier of fact could find that Sandoval agreed to a plan that (1) manifested an extreme indifference to human life, (2) created a grave risk of death, and (3) resulted in Camille Love's death. *See* RCW 9A.28.040(1); 9A.32.030(1)(b).

Therefore the evidence is sufficient to support Sandoval's conviction for conspiracy to commit first degree murder by extreme indifference.[3] Sandoval's sufficiency of the evidence arguments fail.

## PERSONAL RESTRAINT PETITION

In his personal restraint petition, Sandoval appears to argue that his restraint is unlawful because (1) his arrest violated the Fourth Amendment,[4] (2) his interrogation violated the Fifth Amendment, and (3) the State lacked authority to prosecute him. We disagree.

We consider the arguments raised in a personal restraint petition under one of two different standards, depending on whether the argument is based on constitutional or nonconstitutional grounds. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004). A petitioner raising constitutional error must show that the error caused actual and substantial prejudice. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d 335 (2007). In contrast, a petitioner raising nonconstitutional error must show a fundamental defect resulting in a complete miscarriage of justice. *Elmore*, 162 Wn.2d at 251.

Further, a personal restraint petition must state with particularity the factual allegations underlying the petitioner's claim of unlawful restraint. *In re Pers. Restraint of Rice*, 118 Wn.2d

---

[3] Sandoval further argues that the evidence fails to show an agreement to commit *premeditated murder* because there was "no agreement as to what, if any, degree of injury would be inflicted by the shooting." Br. of Appellant at 21. But because the evidence is sufficient to prove conspiracy to commit first degree murder by extreme indifference, we do not address this argument.

[4] At the CrR 3.5 hearing, Sandoval argued that his custodial statements were involuntary because his arrest was unlawful.

876, 885-86, 828 P.2d 1086 (1992). Bald assertions and conclusory allegations are not sufficient. *Rice*, 118 Wn.2d at 886.

First, Sandoval argues that his probation officer violated the Fourth Amendment by arresting him at the Puyallup Fair without having a warrant or affidavit of probable cause. But at arraignment, the superior court's commissioner determined that, based on the prosecutor's declaration, probable cause existed at the time of Sandoval's arrest. This argument fails.

Second, Sandoval argues that Tacoma police violated his Fifth Amendment rights by (1) "using intimidation, coercion, duress, and deception" during his interrogation and (2) interrogating him without advising him of his *Miranda* rights. Pet. at 3. But Sandoval's claim of a coercive interrogation is nothing more than a bald assertion, which is insufficient. *See Rice*, 118 Wn.2d at 886. Further, the trial court determined that Tacoma police advised Sandoval of his *Miranda* rights at the start of the interrogation and again at the beginning of the recorded statement. This argument fails.

Third, Sandoval challenges the State's authority to prosecute him on three meritless grounds. Specifically, Sandoval contends that (1) "the STATE OF WASHINGTON, Corporation is just a name and does not Exist," (2) the State "is Bankrupt" and violated the payment of debts clause in article I, section 10 of the United States Constitution,[5] and (3) the State cannot bring a criminal action or appear in court. Pet. at 3. But, as a matter of law, each

---

[5] Sandoval misrepresents article I, section 10 as declaring, "'All States Shall Pay their debt in gold and silver coin.'" Pet. at 3. In fact, article I, section 10, clause 1 provides, "No State shall . . . make any Thing but gold and silver Coin a Tender in Payment of Debts."

claim fails: (1) the State of Washington has existed since its admission to the Union, ch. 180, 25 Stat. 676, (1889), and Proclamation No. 8, 26 Stat. 1552-53 (Nov. 11, 1889); (2) the payment of debts clause secures private contractual rights and has no apparent relevance to a criminal prosecution, *see Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648 (1798) (opinion of Chase, J.); and (3) the Washington Constitution *requires* all criminal prosecutions to be conducted in the State's name and by its authority, WASH. CONST. art. IV, § 27.

Sandoval fails to make the required showing of a constitutional error or a fundamental defect.[6] Therefore we dismiss his petition.

We affirm the convictions and dismiss the petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Johanson, J.

_____
Bjorgen, J.

---

[6] Sandoval also asserts that his arrest and interrogation each violated the Eighth Amendment's prohibition against cruel and unusual punishment. But because Sandoval fails to state any factual allegations of cruel and unusual punishment with particularity, we do not consider this argument. *See Rice*, 118 Wn.2d at 885-86.